811 So.2d 1242 (2002)
DAUTERIVE CONTRACTORS, INC.,
v.
LANDRY AND WATKINS, A Law Partnership.
No. 01-1112.
Court of Appeal of Louisiana, Third Circuit.
March 13, 2002.
*1245 James H. Gibson, Allen & Gooch, Lafayette, LA, for Defendant/Appellee: Landry & Watkins, A Law Partnership.
Kai David Midboe, Midboe, Guirard, Davis, and Brinsko, LLP, Baton Rouge, LA, for Plaintiff/Appellant: Dauterive Contractors, Inc.
Court composed of ULYSSES GENE THIBODEAUX, MARC T. AMY and ELIZABETH A. PICKETT, Judges.
THIBODEAUX, Judge.
This is a legal malpractice action instituted under La.R.S. 9:5605 by plaintiff-client, Dauterive Contractors, Inc., against defendant-law firm, Landry & Watkins, A Law Partnership, for failure to timely file proof of claim in bankruptcy court proceedings. In response, Landry & Watkins filed an exception of prescription/peremption, alleging that the legal malpractice action was untimely, having been filed more than one year from the date Dauterive Contractors gained knowledge of the facts sufficient to place them on notice of their potential claim against Landry & Watkins. The trial judge granted the exception and Dauterive Contractors appealed. For the reasons set forth below, we affirm.

I.

ISSUES
We shall consider whether:
(1) Mr. William Repaske, a partner at Landry & Watkins, terminated his attorney-client relationship with Mr. Dauterive on January 18, 1999.
(2) Mr. Edward Landry, a partner at Landry & Watkins, represented Mr. Dauterive in bankruptcy and/or malpractice proceedings after January 18, 1999.
(3) Landry & Watkins engaged in a continuing tort or separate torts that rendered Mr. Dauterive's suit timely in February 2000.
(4) Landry & Watkins engaged in misleading conduct in representing Mr. Dauterive in the bankruptcy and/or malpractice proceedings which amounted to fraud.
(5) the one-year period of limitation contained in La.R.S. 9:5605(A) is so unreasonably short as to be arbitrary and in violation of Amendments IV and V of the United States Constitution and Article 1, Sections 2 and 22 of the Louisiana Constitution of 1974.

II.

FACTS AND PROCEDURAL HISTORY
Mr. Aubrey Dauterive is the President of Dauterive Contractors, Inc. (hereinafter "Dauterive Contractors"), a business located in New Iberia, Louisiana that leases *1246 boats to the oilfield industry. Among Dauterive Contractors' clientele was Grant Geophysical, Inc. (hereinafter "Grant"). In the fall of 1996, Grant became delinquent in account payments to Dauterive Contractors, prompting the plaintiff company to retain Landry & Watkins, A Law Partnership (hereinafter "Landry & Watkins") with a view toward the collection of unpaid invoices in an amount exceeding $300,000. There was no written contract reflecting this retention.
The particular matter for which Dauterive sought legal aid was handled by Mr. William Repaske, a partner at Landry & Watkins. Initially, Mr. Repaske composed collection letters to Grant. These attempts proved unsuccessful. On December 6, 1996, Grant filed for bankruptcy and Landry & Watkins continued to represent Dauterive Contractors through the course of the bankruptcy proceedings.
In order to preserve their claim against Grant in the proceedings, Dauterive Contractors was required to file a proof of claim in the bankruptcy court by May 7, 1997. This filing was Mr. Repaske's responsibility. According to his testimony, he drafted a proof of claim by hand, which his secretary was to type and then arrange for Mr. Dauterive to sign. Mr. Dauterive remembers having signed something, which may or may not have been the original proof of claim. In any event, Mr. Repaske asserts that the proof of claim was completed and mailed. However, the documentation has allegedly been lost. The firm asserts that it never received responsive correspondence from the bankruptcy court.
The deadline, i.e., "bar date," for filing the proof of claim in the bankruptcy proceeding was set for May 7, 1997 by the "Notice of Last Date for Creditors to File Proofs of Claim" which was sent to Landry & Watkins. Mr. Repaske did not realize that a claim had not been filed until an August 5, 1998 telephone conversation with the disbursing attorney. According to his testimony, Mr. Repaske relayed this information to his client shortly thereafter, and agreed to investigate possible alternatives. Mr. Repaske explained to Mr. Dauterive that he had malpractice insurance and his client could make a claim. He could not say for sure, however, whether he told Mr. Dauterive "talk to someone else" at this point. Mr. Repaske did not refer to his error as legal malpractice, nor did he explain that there was a period of time during which malpractice claims must be filed. He did not comment on the potential conflict of interest, nor did he seek to terminate the attorney-client relationship.
Upon investigation, Mr. Repaske was told by a former U.S. bankruptcy trustee that bankruptcy courts had been known, in some instances, to honor late claims. He conferred with Mr. Dauterive and decided to file a new proof of claim. It was signed by Mr. Dauterive on November 9, 1998, and mailed on or about November 11, 1998, roughly 18 months after the original "bar date." Mr. Dauterive testified that filing the new proof of claim indicated to him that there was a chance for recovery in the bankruptcy proceedings; he believed there was only a "minute chance" that Dauterive Contractors would not recover. According to Mr. Dauterive's testimony, he was not told that the claim was forever barred in bankruptcy, nor was he told that the late filing amounted to an act of malpractice. He was not told to seek independent counsel, was not told of any conflict of interest, and, according to his testimony, his attorneys remained silent on the period of limitation for the malpractice suit, and they did nothing to interrupt it.
*1247 Ms. Julie Badeaux, secretary in charge of accounts receivable at Dauterive Contractors (and former employee of Landry & Watkins), testified regarding the November 9, 1998 proof of claim that though she knew it could be rejected for being untimely, she nevertheless believed it had as good a chance of being honored as if it had been filed timely. She testified that it was not until November 1998 that she first learned that the filing deadline had been missed, and that Mr. Repaske had admitted to Mr. Dauterive that he had made a mistake. She was never told that the claim was forever barred in bankruptcy. She testified that Mr. Repaske did not seek to terminate the attorney-client relationship with her, did not advise her to seek independent counsel, nor did he inform her that there was a period of limitation for the legal malpractice claim.
Mr. Repaske's testimony is significant especially since the trial judge found his recollection more complete. He claimed that when the November 9, 1998 document was signed, he told his client that his malpractice insurance would compensate for the mistake and that Mr. Dauterive was free to make a claim. He also encouraged his client to "talk to someone else" and explained that if an objection was filed against the new proof of claim, there would be no chance for recovery.
On January 18, 1999, an objection was lodged against the proof of claim. When Mr. Repaske contacted Mr. Dauterive with news of the objection, he specifically recalled telling his client that there was no longer any possibility of recoverythat "that was the end." He explained that a claim could be made against the malpractice insurance carrier and that "you need to talk to someone else."
Mr. Dauterive testified that by January 1999, Mr. Repaske had admitted his mistake and had mentioned the malpractice insurance carrier. He testified that on the date the objection was filed, he was told by the law firm to wait for the bankruptcy court decision on the objection. Only then would he know the success of the late-filed proof of claim. Contrarily, Mr. Repaske testified that he would not have told his client to do nothing, and that by telling them that he had malpractice insurance, he was not discouraging them from pursuing a malpractice claim. Mr. Repaske agreed that he never discussed the period of limitation for legal malpractice, nor did he take any action to interrupt it.
By January 18, 1999, Mr. Repaske considered the attorney-client relationship to have ceased and testified that after such date, he no longer had any contact with Mr. Dauterive or his business. Though there is no document reflecting the relationship's alleged termination, Mr. Repaske no longer participated in the bankruptcy proceeding. Mr. Dauterive agreed with Mr. Repaske that at some point after January 18, 1999, Mr. Repaske no longer took his calls; however, Mr. Dauterive testified that he still felt represented by the firm. Mr. Repaske testified that he spoke with Ms. Badeaux via telephone sometime after January 1999 and suggested she draft a demand letter to Landry & Watkins.
Testimony revealed that during the course of these events, Mr. Edward Landry, another partner in the firm, continued to represent Mr. Dauterive and his company in other matters. Mr. Landry was not responsible for the submission of the proof of claim and Mr. Dauterive admits that he never discussed the Grant matter with Mr. Landry until 1999. From 1999 to 2000, there were several occasions when Mr. Dauterive made inquiries to Mr. Landry *1248 about the status of the malpractice matter. Each time, Mr. Landry relayed information obtained from the attorney representing Landry & Watkins and the malpractice insurance carrier.
Mr. Dauterive never gave Mr. Landry any specific authority to negotiate a settlement with the insurance carrier. Mr. Landry testified that he was not familiar enough with the situation to know that the period of limitation for the malpractice claim would be at issue. He did not seek to formally terminate the attorney-client relationship, primarily because he had not been representing Dauterive Contractors on the bankruptcy matter.
In March 1999, the bankruptcy court ruled the new proof of claim untimely. Ms. Badeaux testified, and Mr. Dauterive agreed, that this was the first time that Dauterive Contractors learned that the claim against Grant was forever barred in bankruptcy. According to Mr. Dauterive, this was the first time Landry & Watkins informed him that an act of malpractice had been committed and that insurance coverage was in effect. When informing him of the bankruptcy court's March 1999 ruling, the firm did not, according to Mr. Dauterive, tell him to seek independent counsel, did not explain the period of limitation for legal malpractice, and did not take any action to interrupt it. Mr. Dauterive still believed he was involved in an attorney-client relationship with Landry & Watkins.
On June 1, 1999, Dauterive Contractors made a formal demand on Landry & Watkins and/or its malpractice carrier for payment of $304,915.74. A second demand letter was sent to Mr. Repaske on August 31, 1999, which referenced the first. Ms. Badeaux testified that these demand letters were written with full knowledge of the failure to timely file the proof of claim. According to Mr. Dauterive, the letters were written with full knowledge that the claim in bankruptcy was forever barred.
Mr. Landry testified that on January 26, 2000, he informed Mr. Dauterive that the insurance carrier's attorney believed that a legal malpractice claim against Landry & Watkins may be prohibited as untimely, at which point he told Mr. Dauterive to retain another attorney. Mr. Dauterive testified that until January 2000, he believed that Landry & Watkins was representing him.
On February 11, 2000, Dauterive Contractors filed the instant action against Landry & Watkins, alleging legal malpractice on the part of two partners, Mr. Repaske and Mr. Landry. The suit was met by an exception of prescription/peremption. The law firm contends that this action is untimely, having been filed more than one year from Dauterive Contractors having knowledge of the facts sufficient to place them on notice of their potential claim against the defendants.
On March 27, 2001, an evidentiary hearing on the exception was held, and the trial court signed a judgment on May 14, 2001, granting Landry & Watkins' exception of prescription/peremption. Dauterive Contractors filed this appeal.

III.

LAW AND DISCUSSION

Standard of Review
An exception of prescription is a peremptory exception that is among those listed in La.Code Civ.P. art. 927. The list is nonexclusive. A peremptory exception may therefore rightfully include an exception of peremption, the effect of which would be to terminate the litigation.
*1249 A peremptory exception may be raised at any stage of the proceeding in the trial court prior to the submission of the case for a decision. La.Code Civ.P. art. 928(B). Where, as here, a peremptory exception is pled prior to trial, the exception is tried and disposed of in advance of or on the trial of the case. La.Code Civ.P. art. 929. When evidence is introduced and evaluated at the trial of the exception, an appellate court must evaluate subject to the traditional rules governing appellate review of facts. Parker v. Buteau, 99-519 (La.App. 3 Cir. 10/13/99); 746 So.2d 127. Therefore, "the trial court's factual determinations regarding preemption [sic]/prescription should not be reversed in the absence of manifest error, as the issue to be decided by the appellate court is not whether the trier of fact was right or wrong, but rather whether the fact finder's conclusion was a reasonable one." Turnbull v. Thensted, 99-0025, p. 5 (La.App. 4 Cir. 3/1/00); 757 So.2d 145, 149, writ denied, XXXX-XXXX, 1503 (La.8/31/00); 766 So.2d 1277, 1278. We will not overturn the trial court's finding of fact unless it is clearly wrong or in the absence of manifest error. Stobart v. State Through DOTD, 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989).

Reconciling La.R.S. 9:5605
The law governing legal malpractice actions has evolved in recent years. What was once adjudicated in the context of tort and contract theories is now statutorily controlled. The court in Phillip v. Home Ins. Co., 95-406 (La.App. 5 Cir. 2/27/96); 671 So.2d 943, writ denied, 96-1238 (La.6/28/96); 675 So.2d 1124 does an excellent job of summarizing the law's development in this area.
Historically, prescription for legal malpractice claims was governed by the general prescription articles, La.C.C. art. 3492 or La.C.C. art. 3499, depending on whether the claim was in tort or for breach of contract, respectively. Under La.C.C. art. 3492, the prescriptive period for a legal malpractice claim sounding in tort was one year. That period did not run until discovery and the prescriptive period could be suspended during the continuous representation of the client by the attorney regarding the specific subject matter in which the alleged wrongful act or omission occurred. Braud v. New England Ins. Co., 576 So.2d 466 (La.1991). Under La.C.C. art. 3499, the prescriptive period on a breach of contract claim was 10 years. That prescriptive period begins to run from the date that the contract is allegedly breached. Deshotels v. Fruge, 364 So.2d 258 (La.App. 3rd Cir.1978).
Most legal malpractice actions are delictual and are governed by the one-year prescriptive period. This rule was historically subject to two exceptions: (1) when the attorney expressly warrants a specific result and fails to obtain that result, and (2) when the attorney agrees to perform certain work and does nothing whatsoever. In these two contexts, the action would be in contract and subject to the ten-year prescriptive period. Lima v. Schmidt, 595 So.2d 624 (La. 1992). However, in 1990, the legislature changed the prescriptive periods for legal malpractice claims by enacting La. R.S. 9:5605 ... That statute was amended in 1992, and, as amended, is the current law applicable to prescription of legal malpractice actions.

Id. at 946 (emphasis added).
The current and controlling law is found at La.R.S. 9:5605, which reads in full:
A. No action for damages against any attorney at law duly admitted to *1250 practice in this state, any partnership of such attorneys at law, or any professional corporation, company, organization, association, enterprise, or other commercial business or professional combination authorized by the laws of this state to engage in the practice of law, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide legal services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.

B. The provisions of this Section are remedial and apply to all causes of action without regard to the date when the alleged act, omission, or neglect occurred. However, with respect to any alleged act, omission, or neglect occurring prior to September 7, 1990, actions must, in all events, be filed in a court of competent jurisdiction and proper venue on or before September 7, 1993, without regard to the date of discovery of the alleged act, omission, or neglect. The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.

C. Notwithstanding any other law to the contrary, in all actions brought in this state against any attorney at law duly admitted to practice in this state, any partnership of such attorneys at law, or any professional law corporation, company, organization, association, enterprise, or other commercial business or professional combination authorized by the laws of this state to engage in the practice of law, the prescriptive and peremptive period shall be governed exclusively by this Section.

D. The provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including minors and interdicts.
E. The peremptive period provided in Subsection A of this Section shall not apply in cases of fraud, as defined in Civil Code Article 1953.

(emphasis added).
The Louisiana Supreme Court has referred to "the clear wording of this statute...." Reeder v. North, 97-0239, p. 5 (La.10/21/97); 701 So.2d 1291, 1295. However, a thorough reading of La.R.S. 9:5605 reveals several internal inconsistencies among its subsections. Subsection A refers to two distinct periods of time within which a legal malpractice action must be broughta one-year period and a three-year period. Subsection B clearly states that "[t]he one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods...." (emphasis added). Until this point, the statute is clear.
Subsections C and E are the two sources of confusion. Subsection C states that "the prescriptive and peremptive period shall be governed exclusively by this Section." (emphasis added). Since the word "period" is singular, the implication in Subsection C is that either the one-year or the three-year period (the statute *1251 does not clarify which) is both prescriptive and peremptive. Peremption can be categorized as a species of prescription, indeed, and has been referred to as a form of prescription. Flowers, Inc. v. Rausch, 364 So.2d 928 (La.1978); Coffey v. Block, 99-1221 (La.App. 1 Cir. 6/23/00); 762 So.2d 1181, writ denied, 2000-2226 (La.10/27/00); 772 So.2d 651; McCoy v. City of Monroe, 32,521 (La.App. 2 Cir. 12/8/99); 747 So.2d 1234, writ denied, XXXX-XXXX (La.3/30/01); 788 So.2d 441. However, as the Louisiana Supreme Court explained in Hebert v. Doctors Mem'l Hosp., 486 So.2d 717, 723 (La.1986), prescriptive and peremptive periods are not the same thing in terms of their respective applications:
Peremption differs from prescription in several respects. Although prescription prevents the enforcement of a right by legal action, it does not terminate the natural obligation (La.Civ.Code art. 1762(1)); peremption, however, extinguishes or destroys the right (La.Civ. Code art. 3458). Public policy requires that the rights to which peremptive periods attach are to be extinguished after passage of a specified period. Accordingly, nothing may interfere with the running of a peremptive period. It may not be interrupted or suspended [La.Civ. Code art. 3461]; nor is there provision for its renunciation. And exceptions such as contra non valentem are not applicable. As an inchoate right, prescription, on the other hand, may be renounced, interrupted, or suspended....
(footnote omitted). See also Reeder, 701 So.2d at 1298; Davis v. Coregis Ins. Co., XXXX-XXXXX (La.App. 3 Cir. 12/27/00); 789 So.2d 7, writ denied, XXXX-XXXX (La.3/30/01); 788 So.2d 1192; Coffey, 762 So.2d 1181.
Finally, Subsection E sets out a special rule in cases of fraud. It refers to "[t]he peremptive period provided in Subsection A of this Section ...." (emphasis added). Here again, the word "period" is singular. However, Subsection A refers to two periods, which, according to Subsection B, are both peremptive. The statute does not clarify whether the fraud exception applies to the one-year or the three-year period. In our estimation, therefore, La.R.S. 9:5605 is susceptible of different meanings.
We have been unable to locate one Louisiana case (save, perhaps, Reeder) that sheds light upon these inconsistencies. The circuits are understandably scattered. Select cases have been listed below for effect, to underscore the disparate treatment of La.R.S. 9:5605. Some cases refer to the one-year period as prescriptive. See Allen v. Carollo, 95-1840 (La.App. 1 Cir. 4/4/96); 674 So.2d 283; Vaughn v. Slaughter, 94-0552 (La.App. 1 Cir. 3/3/95); 653 So.2d 36, writ denied, 95-0828 (La.5/5/95); 654 So.2d 339; Smith v. Boothe, 28,065 (La.App. 2 Cir. 2/28/96); 669 So.2d 682, writ denied, 96-0821 (La.5/10/96); 672 So.2d 928; Morgan v. Campbell, Campbell & Johnson, 27,390 (La.App. 2 Cir. 9/27/95); 661 So.2d 540; Seaux v. Doucet, 96-854 (La.App. 3 Cir. 12/11/96); 685 So.2d 537; Jones, Walker, Waechter, Poitevent, Carrere and Denegre, L.L.P. v. Homestead Ins. Co., 97-0710 (La. App. 4 Cir. 9/10/97); 700 So.2d 233, writ denied, 97-2975 (La.2/6/98); 709 So.2d 742; Succession of Hellmers, 93-2386, 93-2387, 93-1883, 93-2073 (La.App. 4 Cir. 5/26/94); 637 So.2d 1302; Bell v. Ott, 94-824 (La. App. 5 Cir. 2/13/96); 671 So.2d 941, writ denied, 96-0637 (La.5/3/96); 672 So.2d 696.
Some cases refer to the three-year period as peremptive. See Kennedy v. Macaluso, *1252 XXXX-XXXX (La.App. 1 Cir. 2/16/01); 791 So.2d 697, writ denied, XXXX-XXXX (La.5/4/01); 791 So.2d 655; Raby-Magee v. Matzen, 98-2364 (La.App. 1 Cir. 3/31/00); 764 So.2d 978; Carroll v. Wolfe, 98-1910 (La.App. 1 Cir. 9/24/99); 754 So.2d 1038; Allen, 674 So.2d 283; Vaughn, 653 So.2d 36; McCoy, 747 So.2d 1234; Gowan v. Ingram, 31,037 (La.App. 2 Cir. 9/23/98); 718 So.2d 614, writ denied, 98-2696 (La.1/8/99); 735 So.2d 631; Morgan, 661 So.2d 540; Davis, 789 So.2d 7; Graham v. Conque, 626 So.2d 870 (La.App. 3 Cir.1993), writ denied, 93-3169 (La.2/11/94); 634 So.2d 383; Turnbull, 757 So.2d 145; Latter v. ABC Ins. Co., 97-1968 (La.App. 4 Cir. 9/30/98); 719 So.2d 653, writ denied, 98-2623 (La.12/11/98); 730 So.2d 459; Succession of Hellmers, 637 So.2d 1302; Sanches v. Morris, 01-398 (La.App. 5 Cir. 11/14/01); 802 So.2d 755; Andre v. Golden, 99-689 (La.App. 5 Cir. 12/21/99); 750 So.2d 1101, writ denied, XXXX-XXXX (La.3/17/00); 757 So.2d 643; Academy Mortgage Co., L.L.C. v. Juarez, 98-963 (La.App. 5 Cir. 6/1/99); 740 So.2d 708, writ denied, 99-2238 (La.11/5/99); 750 So.2d 191; Bell, 671 So.2d 941.
Still other cases refer to both the one-year and the three-year period as peremptive. See Reeder, 701 So.2d 1291; Coffey, 762 So.2d 1181; Dowell v. Hollingsworth, 94-0171 (La.App. 1 Cir. 12/22/94); 649 So.2d 65, writ denied, 95-0573 (La.4/21/95); 653 So.2d 572; Shreveport Credit Recovery, Inc. v. Modelist, 33-369 (La.App. 2 Cir. 5/15/00); 760 So.2d 681, writ denied, 2000-2159 (La.10/27/00); 772 So.2d 125; Cardneaux v. Dollar, 31,718 (La.App. 2 Cir. 3/31/99); 731 So.2d 928; Lambert v. Toups, 99-72 (La.App. 3 Cir. 10/13/99); 745 So.2d 730; Broussard v. F.A. Richard & Assoc., Inc., 98-1167 (La. App. 3 Cir. 3/17/99); 732 So.2d 578; Taussig v. Leithead, 96-960 (La.App. 3 Cir. 2/19/97); 689 So.2d 680; Seaux, 685 So.2d 537; Boykin v. Coregis Ins. Co., 01-301 (La.App. 5 Cir. 10/17/01); 800 So.2d 926; Drennan v. Killian, 97-1120 (La.App. 5 Cir. 4/28/98); 712 So.2d 978; Faubion v. Marshall, 246 B.R. 829 (W.D.La.2000).
In Reeder, the Louisiana Supreme Court said that "[t]he legislature was particularly clear in wording La.R.S. 9:5605 so as to leave no doubt as to its intent." Reeder, 701 So.2d at 1295. The court then went on to cite La.Civ.Code art. 9 for the proper interpretation of clear and unambiguous law. As evidenced by the foregoing, however, we take issue with the proposition that the statute contains "clear wording." Therefore, we turn to La.Civ. Code art. 10, which reads: "When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law." Article 10 authorizes the Louisiana Supreme Court to interpret a conflicting or illogical statute so as to conform to the law's purpose. Thomas v. Ins. Corp. of Am., 93-1856 (La.2/28/94); 633 So.2d 136. And despite its reliance on La.Civ.Code art. 9 in Reeder, the supreme court did just that. The court simply quoted directly from La.R.S. 9:5605(B), and without addressing the statute's inconsistencies, stated that "`[t]he one-year and three-year periods of limitations... are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.'" Reeder, 701 So.2d at 1298. The court then noted the distinct differences between peremptive and prescriptive periods.
We hold that both the one-year and three-year periods are peremptive and are subject to all rules governing peremption. *1253 This holding is buttressed primarily by our supreme court's clear language in Reeder. Moreover, as the court in Boykin, 800 So.2d at 929 explained, "[i]n their brief, the Plaintiffs argue that the most reasonable interpretation of La.R.S. 9:5605 is that the one-year period functions as a prescriptive period, not a peremptive period, regardless of how the legislature referred to it. We disagree. The statute unequivocally states that the limitation period is peremptive." Our holding is also supported by the language of Subsection F of the professional accounting liability statute, found at La.R.S. 9:5604, which refers to the "peremptive periods provided in Subsections A and B of this Section ...." (emphasis added). As with La.R.S. 9:5605(B), the implication of La.R.S. 9:5604(F) is that both the one-year and three-year periods of limitation are peremptive. Since the two statutes are otherwise identical in all meaningful respects, and because they both concern the same subject matter (i.e., professional liability), La.Civ.Code art. 13 directs us to interpret them in reference to each other.
For reasons delineated in the appropriate section below, we further hold that in cases of fraud, the "peremptive period" referenced in La.R.S. 9:5605(E) refers to the three-year peremptive period only. Therefore, if fraud is proven, the three-year peremptive period will be inapplicable. The presence of fraud notwithstanding, however, the one-year peremptive period is always applicable, and the malpractice action must still be brought within one year of the alleged act or within one year from the date that the alleged act is discovered or should have been discovered.

Present Application of La.R.S. 9:5605
The trial judge correctly noted in her Reasons for Ruling that the legal malpractice occurred on May 7, 1997, when Mr. Repaske failed to file the proof of claim in the bankruptcy court. Dauterive Contractors alleges such in paragraph 18 of its petition. The burden of proving prescription is typically on the party pleading it. However, when the action is prescribed on the face of the petition, the burden shifts to the plaintiff. He must prove that the claim has not prescribed by showing either suspension, interruption, or renunciation prescription. Bourque v. Hoychick, 97-627 (La.App. 3 Cir. 11/19/97); 704 So.2d 815; Taussig, 689 So.2d 680; Seaux, 685 So.2d 537; Lima, 595 So.2d 624 (La.1992).
We recognize that these jurisprudential rules apply to prescription. However, both the running of prescription and the running of peremption have the effect of terminating the litigation. Though different in their operation, the relatedness of the two theories justifies application of prescription's burden-shifting principles enunciated in the jurisprudence to peremption. See Academy Mortg. Co., L.L.C., 740 So.2d at 713 ("There is nothing in the record to rebut the presumption that the cause of action perempted on its face."). Therefore, when the plaintiffs petition is perempted on its face, the burden shifts to the plaintiff to show why the claim has not perempted.
The petition in this case was filed on February 11, 2000, more than one year after the act of malpractice. On the face of the petition, the action is perempted. As such, the burden of proof is on Dauterive Contractors to overcome the allegation of peremption. Even in light of each assignment of error, the plaintiff has failed to carry this burden. According to La. R.S. 9:5605, no malpractice action may be filed unless done so within one year from *1254 the date of the act of malpractice (which was on May 7, 1997). On the one hand, this means that the malpractice action must have been brought by May 7, 1998. However, the statute clearly goes on to say in Subsection A that the action may be brought within one year from the date the act was discovered or should have been discovered.
In Griffin v. Kinberger, 507 So.2d 821 (La.1987), our supreme court determined whether the plaintiffs had actual or constructive knowledge that they were the victims of medical malpractice sufficient to commence the running of the one-year prescriptive period. In the pre-La.R.S. 9:5605 case of Norwood, the Second Circuit applied the Griffin principles to a legal malpractice action.
The standard imposed in Griffin is that of a reasonable man. This standard is designed to establish a rule that any plaintiff who had knowledge of facts that would place a reasonable man on notice that malpractice may have been committed shall be held to have been subject to the commencement of prescription by virtue of such knowledge even though he takes the position that he did not know because these facts were not sufficient to trigger such knowledge in his mind.
Taussig, 689 So.2d at 684 (quoting Norwood v. Fish, 537 So.2d 783, 786 (La.App. 2 Cir.), writ denied, 539 So.2d 634 (La. 1989)). Norwood adjudicated a legal malpractice case prior to the enactment of La.R.S. 9:5605 when prescriptive periods were still applicable. We have said that La.R.S. 9:5605 is peremptive in nature. Considering, however, that the language of Subsection A imposes a discovery exception to the one-year peremptive period, we think that the Griffin reasonableness standard is applicable in determining when the peremptive period commences in the context of modern legal malpractice actions. To determine the application of the reasonableness standard to Mr. Dauterive's knowledge, a review of the pertinent facts is in order.
The trial judge found Mr. Repaske's recollection more complete. And we note that "[w]hen findings are based on determinations regarding the credibility of witnesses, the manifest errorclearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said." Rosell, 549 So.2d at 844. Moreover, considering any discrepancies between Mr. Repaske and Mr. Dauterive's testimony, we note that "reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony." Stobart, 617 So.2d at 882. See also Rosell, 549 So.2d 840; Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
By early August 1998, Mr. Dauterive was apprised of the late filing when Mr. Repaske relayed the information to him. According to his testimony, Mr. Repaske explained at that point that he had malpractice insurance and that Mr. Dauterive could make a claim. He could not say for sure, however, whether he told Mr. Dauterive "talk to someone else" at this point. Mr. Repaske claimed that on November 9, 1998, he told his client that his malpractice insurance would compensate for the mistake and that Mr. Dauterive was free to make a claim. He also encouraged his client to "talk to someone else" and explained that if an objection was filed against the new proof of claim, there would be no chance for recovery. So, if not by August 1998, Mr. Dauterive knew of Mr. Repaske's mistake by November 9, 1998, when he signed the new proof of claim. *1255 When the objection was lodged against the new claim on January 18, 1999, Mr. Repaske specifically recalled telling his client that there was no longer any possibility of recoverythat "that was the end." He again explained that a claim could be made against the malpractice insurance carrier and that "you need to talk to someone else."
The trial court found by preponderance of the evidence that on or about August 5, 1998, Mr. Dauterive knew of the existence of facts which would have enabled him to state a cause of action for legal malpractice. We do not believe that this finding is manifestly erroneous. However, to take the analysis a step further, we note that in light of the facts, Mr. Dauterive, as a reasonable man, either discovered or should have discovered the malpractice by August 1998 (as the trial court found), or if not then, by November 1998, or if not then, by January 1999. It is unnecessary for us to pinpoint exactly which of these dates is controlling. It is enough to say that the act of malpractice was discovered or was reasonably discoverable sometime between August 1998 and January 1999. Therefore, even if Mr. Dauterive did not discover or should not have discovered the malpractice until January 1999 at the latest, the suit was still untimely when filed in February 2000. Because Dauterive Contractors' did not file suit within one year from the date of discovery, the three-year peremptive period is inapplicable. Bourque, 704 So.2d 815; Kennedy, 791 So.2d 697.

Termination of the Attorney-Client Relationship Between Mr. Repaske and Mr. Dauterive on January 18, 1999, and Mr. Landry's representation of Mr. Dauterive after January 18, 1999.
The first two issues for review can be treated in conjunction with one another, as they are interrelated. The first is whether Mr. Repaske terminated his attorney-client relationship with Mr. Dauterive on January 18, 1999, and the second is whether Mr. Landry represented Mr. Dauterive in bankruptcy and/or malpractice proceedings after January 18, 1999. The trial judge stated in her Reasons for Ruling that "if the continuous representation doctrine is alive and well in the Third Circuit, which is doubtful, the meritorious reasons for application of that doctrine to this factual situation ceased in January of 1999... After January 18, 1999, Mr. Repaske no longer represented Aubry [sic] Dauterive or Dauterive Contractors, Inc." She stated further that though "[t]he critical question in this case ... is the nature of the relationship between Edward Landry and Aubry [sic] Dauterive from January 1999 through the filing of the suit in February 2000[;] ... there was not a reasonable basis for a belief that Landry undertook representation for this claim."
As discussed in detail below, we are confident that the continuous representation rule is not alive and well in our circuit. As such, though not manifestly erroneous in result, we need not consider the propriety of the trial court's determination of when the attorney-client relationship between Mr. Repaske and Mr. Dauterive ended, or, for that matter, whether or not Mr. Landry undertook to represent Mr. Dauterive or the nature of their relationship. In short, because the continuous representation rule does not apply to peremptive periods, the result is the same, whether in regard to Mr. Repaske or Mr. Landrythe statutory dictates maintain regardless of when the attorney-client relationship ended. The one-year peremptive period still operates to bar this malpractice action.
*1256 On August 5, 1998, Mr. Repaske realized that a proof of claim had not been filed. From then until January 18, 1999, when an objection was filed, he engaged in efforts to repair the damage caused by the malpractice and to keep his client fully informed of his efforts. In March 1999, the bankruptcy court ruled the late proof of claim untimely. Mr. Dauterive claims that only then did he learn that the failure to timely file meant the claim was forever barred. He claims that Mr. Repaske did not advise him of any conflict of interest in further representing the company, did not terminate the attorney-client relationship, and did not advise Mr. Dauterive to seek independent counsel concerning the malpractice. Instead, according to Mr. Dauterive, the firm undertook to represent Mr. Dauterive in dealing with the malpractice insurer. Mr. Landry neither terminated the attorney-client relationship, nor advised him to pursue a malpractice insurance claim with independent counsel until January 26, 2000.
By January 18, 1999, Mr. Repaske considered the attorney-client relationship to have ceased and after such date, he no longer had any contact with Mr. Dauterive or his business. Though there is no document reflecting the relationship's termination, Mr. Repaske no longer participated in the bankruptcy proceeding. Mr. Dauterive agreed with Mr. Repaske that at some point after January 18, 1999, Mr. Repaske no longer took his calls; however, Mr. Dauterive testified that he still felt represented by the firm, especially when, according to him, Mr. Landry undertook to advise him on the malpractice claim.
In Reeder, 701 So.2d 1291, our supreme court disagreed with the appellate court's holding that "`[w]hile the attorney-client relationship is in existence and the attorney is actively attempting to remedy the alleged malpractice until the judgment giving rise to the malpractice claim becomes definitive, a legal malpractice claim does not ripen into a cause of action.'" Id. at 1295 (quoting Reeder v. North, 96-165, p. 10 (La.App. 5 Cir. 11/14/96); 683 So.2d 912, 916). Our facts are similar. Mr. Dauterive claims that after the proof of claim was untimely filed in November 1998, the firm encouraged him to await the decision of the bankruptcy court and undertook to represent him in dealings with the firm's malpractice insurer. In effect, he claims that because the firm never informed him that the late filing was anything other than a correctable mistake, he did not know that it was forever barred until the March 1999 ruling of the bankruptcy court, and therefore did not realize the malpractice until then. In light of Reeder, we cannot give credence to Mr. Dauterive's claims. The supreme court was clear when it stated that "the court of appeal was wrong in holding that the peremptive period did not begin to run until the `facts ripened into a viable cause of action sufficient to support a lawsuit'...." Reeder, 701 So.2d at 1296.
The court in Andre, 750 So.2d 1101 recognized that "In that case [Reeder,] the Supreme Court held that a legal malpractice action is perempted three years after the date of the alleged negligent act under the clear reading of the statute regardless of the ongoing relationship between the client and the attorney. Reeder interpreted the statute as providing an absolute peremptive period of three years." Id. at 1104 (emphasis added). We take this to mean that the exact date of the termination of the attorney-client relationship is a non-issue when the law imposes a peremptive period, which, in the context of legal malpractice, is either one or three *1257 years. In other words, if Mr. Repaske was wrong to think that the attorney-client relationship ended on January 18, 1999, it is of no moment. Even assuming that Mr. Repaske continued to represent his client, his continuous representation does not operate to suspend a "non-suspendable" peremptive period. The inapplicability of the continuous representation rule is discussed in greater detail in the context of Mr. Landry.
Until sometime in 2001, Mr. Landry continued to represent Mr. Dauterive on legal matters unrelated to the bankruptcy proceeding. This is uncontested. Mr. Landry had not been responsible for the submission of the proof of claim, however, and Mr. Dauterive admits that he never discussed the matter with Mr. Landry until 1999. From 1999 to 2000, when Mr. Dauterive made inquiries to Mr. Landry about the status of the malpractice matter, Mr. Landry relayed information obtained from the attorney representing Landry & Watkins and the insurance carrier. Mr. Landry did not seek to formally terminate the attorney-client relationship, primarily because he had not been representing Dauterive Contractors on the bankruptcy matter. According to Mr. Landry's testimony, on January 26, 2000, he informed Mr. Dauterive that the insurance carrier's attorney believed that a claim against Landry & Watkins may be prescribed, at which point he told Mr. Dauterive to retain another attorney. Mr. Dauterive testified that until January 2000, he believed that Landry & Watkins was continuing to represent him.
The Louisiana Supreme Court in Lima, 595 So.2d 624 applied the continuous representation rule to a legal malpractice claim. The court explained that the prescriptive period was suspended during an attorney's continuous representation of the client. The court's determination then focused on when the attorney-client relationship ended, and from that point forward, whether the prescriptive period had been interrupted or renounced.
However, as the court in Reeder explained, Lima's facts centered around a legal malpractice suit that was filed prior to the enactment of La.R.S. 9:5605. Therefore, the one-year prescriptive period of La.Civ.Code art. 3492 governed and because prescriptive periods may be suspended, the continuous representation rule was applicable. Because La.R.S. 9:5605 now governs and because both the one-year and the three-year periods of limitation are peremptive, the rule no longer applies to legal malpractice actions. "As a suspension principle based on contra non valentem, the `continuous representation rule' cannot apply to peremptive periods." Reeder, 701 So.2d at 1298 (footnote omitted). See also Davis, 789 So.2d 7; Drennan, 712 So.2d 978; Faubion, 246 B.R. 829. To hold otherwise would be in direct contravention of La.Civ.Code art. 3461, which mandates that "[p]eremption may not be renounced, interrupted, or suspended." For this same reason, the doctrine of contra non valentem is also inapplicable to peremptive periods. Reeder, 701 So.2d 1291; Davis, 789 So.2d 7; Hebert, 486 So.2d 717. See also Seaux, 685 So.2d 537; Dowell, 649 So.2d 65 (though technically inapplicable to both the one-year and three-year periods, the spirit of contra non valentem is effectively incorporated into the discovery exception of La.R.S. 9:5605(A) in regard to the one-year period).
In Lambert, we said that "the continuous representation rule, which is rooted in the doctrine of contra non valentem, is not *1258 available in legal malpractice actions." Lambert, 745 So.2d at 732. The Fifth Circuit took issue with this. In Gettys v. Sessions and Fishman, L.L.P., 00-1077, 00-1078 (La.App. 5 Cir. 10/31/00); 772 So.2d 874, writ denied, XXXX-XXXX (La.3/16/01); 787 So.2d 311, the plaintiff filed a legal malpractice action in April 1996. The Fifth Circuit relied on Lima for the proposition that the continuous representation rule was applicable to legal malpractice claims, even under La.R.S. 9:5605. The court stated in conclusion: "We, note, that the Third Circuit has held, in contrast to the Louisiana Supreme Court and the Louisiana Fourth Circuit, which [sic] the continuous representation rule does not apply in legal malpractice actions. In light of the supreme court's decisions in Lima, we decline to follow the Third Circuit's opinion in Lambert v. Toups, 99-72 (La.App. 3 Cir. 10/13/99), 745 So.2d 730." Gettys, 772 So.2d at 878.
Though the Fifth Circuit recognized that the continuous representation rule does not suspend the running of peremption, the court misinterpreted Lima's application of the rule to the old law as justification for the rule's application to La.R.S. 9:5605. There is no doubt that the continuous representation rule applied under the old, pre-La.R.S. 9:5605 law. However, as discussed above, the law has changed. The supreme court in Lima recognized this change in footnote 1, by stating that "[i]n 1990, the legislature enacted LSA R.S. 9:5605, which sets forth a specific statutory provision governing the liberative prescriptive period for legal malpractice actions. As the Limas' cause of action arose before the effective date of this statute, we conclude that this statute cannot apply." Lima, 595 So.2d at 628. Since the institution of legal malpractice actions is now limited by peremptive instead of prescriptive periods, the continuous representation rule can no longer operate to suspend or interrupt the time limitations within which the malpractice action must now be brought.

Continuing Tort and Separate Torts
Dauterive Contractors contends first that the continuing attorney-client relationship gave rise to continuing torts and that the one-year period of limitation did not begin to run until the continuously tortious conduct terminated, which, according to the plaintiff, was March 1999 at the earliest, when the company discovered the legal malpractice. The most obvious alleged continuously tortious conduct was the firm's failure to inform of the time limitations associated with legal malpractice actions or take any acts to interrupt such limitations.
Moreover, Dauterive Contractors alleges that when Mr. Repaske learned of the malpractice on August 5, 1998, he should have notified Mr. Dauterive of the act, explained that he had a conflict of interest in further representation, advised Mr. Dauterive to find independent counsel, and terminated the attorney-client relationship. Because the firm did none of these things, Dauterive Contractors argues that the representation continued, and that the firm continued to violate the Rules of Professional Conduct. The client argues that the failure of the firm to comply with these Rules constituted new, independent, and separate acts of malpractice, and that the statute of limitations runs from the date of each such infraction. The most obvious violation of the Rules of Professional Conduct, according to Dauterive Contractors, was the failure to inform the company of time limitations associated with legal malpractice actions or failure to interrupt such.
*1259 The trial court found that because there was no attorney-client relationship between Mr. Dauterive and either Mr. Repaske or Mr. Landry, there could be no continuous representation and no duty breached which would give rise to a continuing tort or additional torts. The trial court's failure to find continuing or separate torts was not manifestly erroneous.
For its continuing tort argument, Dauterive Contractors cites South Central Bell Tel. Co. v. Texaco, Inc., 418 So.2d 531 (La.1982), wherein the Louisiana Supreme Court described the effect of a continuing tort on a one-year prescriptive period. The court said that "[w]hen the tortious conduct and resulting damages continue, prescription does not begin until the conduct causing the damage is abated ... Where the cause of the injury is a continuous one giving rise to successive damages, prescription dates from cessation of the wrongful conduct causing the damage." Id. at 533. See also Ready v. State, Dept. of Health and Human Resources 95-1564 (La.App. 3 Cir. 6/25/97); 707 So.2d 1250, writ denied, 98-1125 (La.6/5/98); 720 So.2d 687.
First of all, Dauterive Contractors did not plead the existence of a continuing tort in its petition. Nevertheless, while we agree that continuous tortious conduct and continuous damages may suspend prescription, we note again that the pertinent time limitation in this case is peremptive. Peremption may not be suspended. Moreover, not only were there no continuous acts of fault, there were no continuous damages. The one act of fault occurred on May 7, 1997, with the failure to timely file the proof of claim. At that point, the damage was done. There was no further damage beyond that date. Whether or not the firm had a duty to inform of the action's peremptive period is a non-issue, since we have already explained that the continuous representation rule does not apply to peremptive periods.
We are not persuaded by Dauterive Contractors' separate tort argument either. In Taussig, 689 So.2d 680, the plaintiff encouraged the court to view the twenty alleged acts of negligence separately and to apply separate prescriptive periods to each. The court declined, explaining that "only a single tort is alleged: negligent representation of the plaintiff during her divorce and community property settlement, albeit by twenty separate acts of negligence." Id. at 683. In finding one single tort, the court lent weight to the fact that the underlying factual bases were the same for each alleged act of negligence and that the alleged acts occurred during a continuous period of representation. See also Gettys, 772 So.2d 874.
In its petition, Dauterive Contractors lists a number of acts allegedly committed by Landry & Watkins, claiming that each "constitute new and separate acts of malpractice by the Defendant law firm." In brief, the plaintiff argues repeated violations of the Rules of Professional Conduct, resulting in independent acts of malpractice, namely, the failure to both inform the client of the time limitation and to interrupt such. We disagree. Whether or not these acts constituted separate acts of malpractice, only one tort is alleged herelegal malpracticeoccasioned by the one act of fault that occurred on May 7, 1997. Additionally, in keeping with the Taussig findings, all of the factual bases are the same and all of the alleged acts occurred during a continuous period of representation.

Fraud
Subsection E of La.R.S. 9:5605 states that, as defined in La.Civ.Code art. 1953, *1260 the existence of fraud operates to make Subsection A's peremptive period inapplicable. La.Civ.Code art. 1953 defines fraud as the "misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction."
Dauterive Contractors alleges that Landry & Watkins failed to inform its client that the claim was forever barred in bankruptcy, failed to inform its client that it had committed legal malpractice, and failed to inform its client of the statute of limitations concerning the malpractice claim. All this, according to Dauterive Contractors, lulled the company into a false sense of security and prevented it from gaining knowledge of and asserting the claim. Specifically, Dauterive Contractors alleges in Paragraph 15 of its petition:
The Defendant law firm also had an affirmative duty to speak or disclose to Petitioner that its claim for the act of malpractice was about to prescribe. Instead, the Defendant law firm said nothing and did nothing to alert Petitioner about the possible prescription of its claimnothing until the very day the claim prescribed. The Defendant law firm acted with a selfish pattern of deceit and suppression of the truth to obtain an unjust advantage over Petitioner, its own client. The silence of the Defendant law firm was intended toand did in factinduce, mislead and fraudulently deceived [sic] the Petitioner into allowing the claim for the act of malpractice to prescribe.
Fraud must be plead in accord with La.Code Civ.P. art. 856, which states in pertinent part that "[i]n pleading fraud or mistake, the circumstances constituting fraud or mistake shall be alleged with particularity." The trial court believed that the plaintiffs petition lacked the specificity required by law. However, even if fraud had been properly pleaded, according to the trial court, evidence at the hearing failed to establish that the firm acted with intent to seek a benefit for itself.
We are not entirely in agreement with the trial court or the defendant that the allegations in the petition were not pled in accord with La.Code Civ. P. art. 856. We believe that, because the petition's formal allegations were sufficiently particularized, that there was a general indication as to the content or nature of the allegation, and that it was neither too general nor conclusory. The allegations, therefore, may not be disregarded. Laneaux v. Theriot, 488 So.2d 1327 (La.App. 3 Cir.1986). However, we need not make a formal determination on this matter. Nor are we required, for resolution of this issue, to decide whether evidence of fraud was adduced at the hearing. Because we agree with the trial court in result, however, its findings were not manifestly erroneous.
Subsection E of La.R.S. 9:5605 states that the existence of fraud operates to make Subsection A's peremptive period inapplicable. Earlier in this opinion, we held that in cases of fraud, the singular "peremptive period" referenced in Subsection E refers to the three-year peremptive period only. Contra Coffey, 762 So.2d at 1187 ("Because the one and three-year limitations of La.R.S. 9:5605(A) are peremptive, the fraud exception of La.R.S. 9:5605(E) is applicable to both."). Therefore, if fraud is proven, the three-year peremptive period will be inapplicable; the claim can be brought at any time after the act of malpractice, subject still, however, to *1261 the one-year peremptive period, to which the fraud exception is inapplicable. In Broussard v. Toce, 99-555, p. 5 (La.App. 3 Cir. 10/13/99); 746 So.2d 659, 662, we said that "Broussard's argument that his fraud claim has not prescribed fails to recognize that this claim is still subject to the one-year prescriptive [peremptive] period from the date of discovery. La.R.S. 9:5605(A). Subsection E of La.R.S. 9:5605 carves out an exception for the three-year peremptive period only." See also Broussard v. F.A. Richard & Assoc. Inc., 732 So.2d 578 (the fraud claim, while not subject to the three-year peremptive period, is still subject to the one-year period).
Whether or not fraud exists in this case, Dauterive Contractors failed to bring the malpractice action within one year of the alleged act or within the always-applicable one-year period, beginning from the date that the alleged act was discovered or should have been discovered. Because the act of malpractice was discovered or was reasonably discoverable sometime between August 1998 and January 1999, the suit was still untimely filed in February 2000. The three-year peremptive period is therefore inapplicable, as is the fraud exception thereto.

Constitutionality of La.R.S. 9:5605
Dauterive Contractors claims that because the peremptive periods of limitation cannot be suspended by either the continuous representation rule or contra non valentem, La.R.S. 9:5605 denies due process of law and unreasonably limits access to the courts in violation of Articles IV and V and the Fourteenth Amendment of the United States Constitution and Article 1, Sections 2 and 22 of the Louisiana Constitution of 1974.
Though there is no singular procedure or type of proceeding that must be employed when urging a statute's unconstitutionality, there are a number of formalities. If the constitutionality of a statute is challenged in a proceeding other than one for a declaratory judgment, as here, "the attorney general should be served notice and/or a copy of the pleading and, at his discretion, be allowed to be heard and to represent or supervise the representation of the interests of the state in the proceeding. LSA R.S. 49:257(B)." Vallo v. Gayle Oil Co., 94-1238, p. 7 (La.11/30/94); 646 So.2d 859, 864 (emphasis in original). Moreover, the unconstitutionality must first be questioned in the trial court and must be specially pleaded, with particularized grounds for the claim. This specific pleading must be raised in a petition (either original, amended and supplemental, or an incidental demand petition), an exception, a motion, or an answer. Because memoranda, oppositions, and briefs do not constitute pleadings, unconstitutionality may not be raised therein. Id.; Reeder, 701 So.2d 1291.
The trial court reasoned that the issue of constitutionality was not properly before the court. However, in its amended and supplemental petition, Dauterive Contractors properly makes Louisiana's Attorney General a party for purpose of service under La.Code Civ.P. art. 1880[1] and, in paragraph 17, alleges that "[t]he prescriptive periods for legal malpractice claims contained in Louisiana Revised *1262 Statute 9:5605 are unconstitutional in that they deny Petitioner due process of law and unreasonably limit access to the court in violation of Article 1, Sections 2 and 22 of the 1974 Louisiana Constitution." We, therefore, think the issue was properly before the court. The trial court did, however, consider the issue notwithstanding its own finding of improper posture for review, and concluded that "[i]t is more probable than not that a time limitation on claims against attorneys would be found to be rationally related to furthering a proper legislative purpose, whether that might be protection of the legal practice, prevention of stale claims, or another." Because we agree with the result of the trial court's findings, legal error is not present.
"The requirement of specially pleading the unconstitutionality of a statute in pleadings implies that this notable issue will receive a contradictory hearing, wherein all the parties will be afforded the opportunity to brief and argue the issue." Vallo, 646 So.2d at 865. At the hearing on the exception, there was absolutely no mention of the constitutionality of the statute. The parties did not argue the issue at all. Unless a statute is constitutionally infirm on its face, the party alleging unconstitutionality must prove such. Soloco, Inc. v. Dupree, 97-1256 (La.1/21/98); 707 So.2d 12. The statute here is not unconstitutional on its face and Mr. Dauterive's burden of proof is not met. He alleges that the statute denied his reasonable right of access to the courts due to the short peremptive periods and therefore resulted in a denial of an adequate remedy. There is absolutely no proof in the record regarding how Mr. Dauterive was denied due process. There is no proof on how he was denied the right of access. The record is, therefore, without evidentiary support for those claims. Absent such proof, his constitutional attack falls. Furthermore,
[t]he test for determining the constitutional validity of a limitation statute is whether it allows a reasonable time for the assertion of the right or the enforcement of the obligation; the legislature is primarily the judge of the reasonableness of the time allowed. Unless the time allowed is so short as to amount to a denial of justice, the courts will not interfere.
Guillory v. Guillory by Arceneaux, 615 So.2d 975, 977 (La.App. 1 Cir.1993) (citations omitted). The time limitations in La.R.S. 9:5605 are not so inadequately short as to deny justice to a litigant.

IV.

CONCLUSION
We conclude by reiterating the words from the Louisiana Supreme Court, that "[w]hile the terms of the legal malpractice statute of limitations statute may seem unfair in that a person's claim may be extinguished before he realizes the full extent of his damage, the enactment of such a statute of limitations is exclusively a legislative prerogative." Reeder, 701 So.2d at 1296. For the reasons assigned, the judgment appealed from is affirmed insofar as it grants the Landry & Watkins' exception of prescription/peremption.
All costs are assessed to Dauterive Contractors, Inc.
AFFIRMED.
AMY, J., CONCURS.
NOTES
[1] When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding. In a proceeding which involves the validity of a municipal ordinance or franchise, such municipality shall be made a party, and shall be entitled to be heard. If the statute, ordinance, or franchise is alleged to be unconstitutional, the attorney general of the state shall also be served with a copy of the proceeding and be entitled to be heard.