PITMAN, J.
11 Plaintiff Amanda Adcock appeals the judgment of the trial court denying her motion for summary judgment in a suit brought against Defendants, Shane Wooten, Keller Williams Realty Parishwide Partners and Parishwide Partners, LLC, based on unfair trade practices, fraud and misrepresentation in a real estate transaction, and granting Defendants’ motion for summary judgment raising the- issue of peremption and dismissing Plaintiffs suit. For the following reasons, we reverse the judgment of the trial court and remand for further proceedings.

FACTS

Plaintiff owned a home in West Monroe, Louisiana, mortgaged to JP Morgan Chase (“Chase”). She lost her job and was unable to make the monthly mortgage payments to Chase, which instituted foreclosure proceedings against her on August 3, 2011. She filed for Chapter 13 bankruptcy on November 11, 2011, to halt foreclosure and listed the home as a part of the bankruptcy estate. At the time she filed for bankruptcy, Plaintiff owed Chase $195,842.29.
In January 2012, Shane Wooten, a real estate agent with the local Kgller Williams Realty agency, contacted Plaintiff about listing the home for sale with him and told her that it could be taken out of the bankruptcy estate.
In March 2012, Plaintiff wrote a letter to Chase to initiate a short sale process. Mr. Wooten was able to secure Chase’s cooperation to have the residence removed from the bankruptcy estate; and, on April 16, 2012, an order was issued by the bankruptcy court removing it from the estate. The | ¡¡bankruptcy court also ordered that, if the sale of the home exceeded the amount owed to Chase, Chase was to forward the *475 proceeds to the bankruptcy .¿trustee for distribution to Plaintiffs other creditors.
On June 22, 2012, Tracy Randall . Ginn, the. spouse , of Jerri Ginn, who was a Keller Williams Realty employee, offered to buy Plaintiffs house for $185,000 plus $5,000 in closing costs. Plaintiff accepted that offer on June 25, 2012, and Mr. Wooten submitted the contract to Chase for its approval, which was required before the sale could be completed. Chase was slow to approve the contract, and the foreclosure proceedings continued, with a sheriffs salé being scheduled for October 10, 2012.
On the day of the scheduled sheriffs sale, Harold Book, a member of Alans, LLC, contacted Plaintiff personally and offered her $202,250 for her house. Plaintiff notified Mr. Wooten that she had been offered over $202,000 for her house, but he emailed her the next day, October 11, 2012, and advised her to reject the offer because the contract with Mr. Ginn was already pending. In that email, Mr. Wooten stated, “[Ujnfortunátély, we can only accept 1 offer at a time, we will have tó reject until I know more on the primary offer.” On October 12, 20Í2, Chase faxed a letter to Mr. Wooten approving the proposed short sale to Mr. Ginn.
The sale from Plaintiff to Mr. Ginn took place on October 19, 2012. Plaintiff alleged that Mr. Wooten gave her a check for $2,000 from his account just prior to the closing, although this payment to her is not accounted for anywhere on the HUD closing statement and obviously was not disbursed by the title company. At the closing, the payoff of |a$167,593.76 for the first mortgage was made to Chase, and Mr. Wooten and Keller Williams Realty received a commission of $11,100 on the sale. That same day, at the same attor-. neyri office, Mr. Ginn sold the property to Mr. Book,, through Alans, LLC, for $202,000; and the proceeds from that sale, as reflected on the HUD-1 statement, were used to pay off Mr. Ginn’s lender and the closing costs, with the remainder paid to Mr. Ginn. .
On -October 18, 2013, Plaintiff filed suit against -Defendants alleging the above facts, and asserting a claim against them under La. R.S. 51:1402, et seq., the Louisiana Unfair Trade Practices Act (“LUT-PA”). She alleged that she had suffered an ascertainable loss of money as a result of the use or employment by another p'er-son of an unfair or deceptive method, act or practice/ She further claimed that, as a result of Defendants’ unethical conduct, she had suffered general and special damages from loss of profit as evidenced by the fact that'Defendants immediately sold the property (the purchase of which they had just ‘negotiated- for $185,000) for $202,000 to the same person who had previously made that purchase offer to h’er. She also sought an award for attorney fees and costs, ■ as well as treble damages in accordance with La. R.S. 51:1409.
Both Plaintiff arid Defendants filed motions for summary judgment. Plaintiffs motion asserted that there are no genuine issues of material fact and that she is entitled to judgment as to both liability and damages. In support of her motion, she offered .her own affidavit; the affidavit of Harold Book; a copy of the email wherein Mr. Wooten.advised her to reject Mr. Book’s offer; the settlement statements and deeds for the sale of the | ¿house from her to Mr. Ginn and then from Mr. Ginn to Alans, LLC; and the records of the Louisiana Secretary of State showing Mr. Wooten’s connection to Ouachita Capital, LLC, which financed Mr. Ginn’s purchase of her property.
Plaintiff argued that these documents establish that Defendants are guilty of fraud, misrepresentation, deception and unethical conduct and prove that there are *476 no genuine issues of material fact as to the amount of damages she is owed, asserting that, had she sold her house to Mr. Book for his offer of $202,000 (assuming the payoff to Chase was $167,593.76), she would have received a profit of $22,286.24. She also asserted the amount that would have been assessed as treble damages if they were so awarded.
Defendants filed a motion for summary judgment in opposition seeking judgment declaring that Plaintiff was not entitled to the damages sought for a variety of reasons, including that she would have been unable to prove the facts necessary for her to recover under the LUTPA. They also raised the issue of peremption of Plaintiffs claim and asserted that any conceivable right of action under the LUTPA for any of Defendants’ acts occurring before October 18, 2012, was extinguished and barred by peremption. Specifically, Defendants argued that Plaintiff had attached to her petition a copy of the email from Mr. Wooten, which, arguably, established her cause of action as arising on October 11, 2012. They asserted that her petition was not filed until October 18, 2013, and, therefore, claimed her cause of action had per-empted under the LUTPA.
| sThe trial court held a hearing on the cross-motions for summary judgment and found that the exception of peremption was properly raised and agreed with Defendants that Plaintiffs suit was perempt-ed, finding that the one-year period set forth in La. R.S. 51:1409(E) began to run on October 11, 2012, the date Mr. Wooten sent the email to Plaintiff telling her to reject Mr. Book’s offer, instead of on October 19, 2012, the date of the two sales of the property. Having found the matter perempted, the trial court pretermitted any “incrimination with regard to the competing motions for summary judgment” and sustained the exception, dismissing Plaintiffs claims at her cost.
Plaintiff appeals the denial of her motion for summary judgment and the grant of Defendants’ motion for summary judgment based on peremption and the subsequent dismissal of the ease at her cost.

DISCUSSION

The sole issue presented by this case is whether Plaintiffs cause of action under the LUTPA perempted as a result of the suit being filed more than one year from the date of Mr. Wooten’s email to Plaintiff advising her that the second offer on the property could not be accepted while the first offer from Mr. Ginn was still awaiting approval by Chase. The transmission of this email was cited by Plaintiff as one act upon which her LUTPA claim was based. However, the transmission of the email was not the only act that may have caused her damage. Plaintiff also argued that she was damaged when Defendants completed the second sale on October 19, 2012, |ñof the same property, but at' a much higher price and to a person who had already approached Plaintiff with the higher offer.
Peremption is defined in La. C.C. art. 3458 as a period of time during which a right can be exercised and provides that “[ujnless timely exercised, the fight is extinguished upon the expiration of the per-emptive period.” In Cote’ v. Hiller, 49,623 (La.App.2d Cir.2/27/15), 162 So.3d 608, it is explained that, although prescription prevents the enforcement of a right by legal action, it does not terminate the natural obligation; peremption, however, extinguishes or destroys the right.
La. R.S; 51:1409 establishes causes of action under the LUTPA and defines the time -limits, within which actions must be brought. It states in pertinent part as follows: -
*477 A. Any person who suffers any ascertainable loss of money or movable property, corporeal ór incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405, may bring an action individually but not in a representative capacity to recover actual damages. If the court finds the unfair or deceptive method, act, or. practice was knowingly used, after being put on notice by the attorney general, the court shall award three times the actual damages sustained. In the event that damages are awarded under this Section, the court shall award to the person bringing such action reasonable attorney fees and costs. Upon a finding by the court that an action under this Section was groundless and brought in bad faith or for purposes of harassment, the court may award to the defendant reasonable attorney fees and costs.
[[Image here]]
E. The action provided by this section shall be prescribed by one year running from the time of the transaction or act which gave rise to this right of action.
17Although the LUPTA states that the action provided by the section “shall be prescribed by one year running from the time of the transaction or act which gave rise to this right of action,” the language has been interpreted as creating a per-emptive, rather than a prescriptive period. See Glod v. Baker, 04-1483 (La.App. 3d Cir.3/23/05), 899 So.2d 642, writ denied, 05-1574 (La.1/13/06), 920 So.2d 238. The Glod court noted that the general rule is that peremption, as opposed to prescription, cannot be interrupted or suspended; and it, therefore, found that the time period was not tolled or suspended by the alleged continuing tort. The Glod court stated:
The Civil Code itself does not contemplate any exceptions to this rule. Louisiana Civil Code Article 3461 states that “[pjeremption may not be renounced, interrupted, or suspended.” The third circuit refused to relax the strict construction of peremption in Dauterive Contractors, Inc. v. Landry & Watkins, 01-1112 (La.App. 3d Cir.3/13/02), 811 So.2d 1242. Dauterive argued that in case of a continuous tort, prescription does not begin until the conduct causing the damage stops. The third circuit agreed that although “continuous tor-tious conduct ... may suspend prescription, we note again that the pertinent time limitation in this case is peremp-tive. Peremption may not be suspended.” Id. at 1259 (emphasis added); see also Bel v. State Farm Mut. Auto Ins. Co., 02-1292, p. 7 (La.App. 1st Cir.2/14/03), 845 So.2d 377, 382 (citing Saia v. Asher, 01-1038 (La.App. 1st Cir.7/10/02), 825 So.2d 1257), writ denied, 03-733 (La.5/30/03), 845 So.2d 1057 (finding that where a “time limitation ... is peremptive, and the principle of continuing torts is a suspensive principle, .ineffective against the effects of per-emption, we find the continuing tort doctrine inapplicable”).
Although typically asserted through the procedural vehicle of the peremptory exception, the defense of prescription or per-emption may also be raised by motion for summary judgment. Hogg v. Chevron USA, Inc., 09-2635 (La.7/6/10), 45 So.3d 991.
IsHaving reviewed this record, we find the trial court was wrong in determining that the LUTPA cause of action perempt-ed one year from the date of the email. We find that any alleged ascertainable loss of money to Plaintiff, and any alleged un *478 fair or deceptive acts - or practices, occurred on the date of the two closings, October 19, 2012,’which is when the monies were disbursed., If the second sale had not occurred, there would not have been a cause of action at all. Her petition filed on October 18, 2013, was timely.

CONCLUSION

• 'For the foregoing reasons, the judgment of the trial court granting the motion for summary judgment in favor of Defendants, Shane Wooten, Keller Williams Realty Parishwide Partners and Parishwide Partners, LLC, and against Plaintiff, Amanda Adcock, finding that her cause of action asserted under the Louisiana Unfair Trade Practices Act had perempted, is hereby reversed and this matter is remanded for further proceedings.' Costs-of this appeal are assessed to Defendants, Shane Wooten, Keller Williams Realty Parishwide Partners and Parishwide Partners, LLC.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.