STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

04-1697

ROADHOUSE BAR-B-QUE, INC.

VERSUS

CERTAIN UNDERWRITERS AT LLOYDS, LONDON, ET AL.

**********

APPEAL FROM THE
TWENTY-EIGHTH JUDICIAL DISTRICT COURT
PARISH OF LASALLE, NO. 32,548
HONORABLE JOHN PHILIP MAUFFRAY, JR., DISTRICT JUDGE

**********

J. DAVID PAINTER
JUDGE

**********

Court composed of Michael G. Sullivan, Billy Howard Ezell, and J. David Painter, Judges.

AFFIRMED.

Kevin L. Cole
James A. Prather
Three Sanctuary Blvd., Suite 301
Mandeville, LA 70471
(985) 674–6680
Counsel for Defendant/Appellee:
    Certain Underwriters at Lloyds, London, Burns & Wilcox of La., Inc., and
    Cunningham Lindsey U.S., Inc.

William H. Parker  III
James Huey Gibson
Allen & Gooch
P. O. Drawer 3768
Lafayette, LA 70502-3768
(337) 291-1270
Counsel for Defendant/Appellee:
    Alexander & Bolton, Inc.

**Keith Wayne Manuel**
**Attorney At Law**
**115 East Ogden Street**
**Marksville, LA 71351**
**(318) 253-5126**
**Counsel for Plaintiff/Appellant:**
**Roadhouse Bar-B-Que, Inc.**

**PAINTER, J.**

Following a fire on its premises, Roadhouse Bar-B-Que, Inc. ("Roadhouse), the insured restaurant, brought suit against Alexander & Bolton, Inc. ("Alexander & Bolton"), the insurance agent who placed the subject coverage, Certain Underwriters at Lloyd's, London ("Lloyd's"), the insurance company, Cunningham Lindsey, U.S., Inc. ("Cunningham Lindsey"), the insurance adjuster, and Burns & Wilcox of La., Inc. ("Burns & Wilcox"), the insurance broker. The trial court dismissed Alexander & Bolton, Inc. on an exception of peremption and further dismissed all claims of the Plaintiff against the other Defendants based on the Plaintiff's failure to amend its petition as previously ordered by the trial court. For the reasons that follow, we affirm the rulings of the trial court.

### FACTUAL AND PROCEDURAL BACKGROUND

On September 10, 1999, Pat Beck, the president of Roadhouse, purchased lots fifteen (15) and sixteen (16) of Block F of the Tremont Addition to the Town of Tullos, physically located at the intersection of Highways 165 and 84, with all improvements and appurtenances, from Benjamin H. Givens. This property had been used by its previous owners to operate a restaurant and bar. Beck leased this property to Roadhouse with Kathlyn Hunt, the secretary/treasurer of Roadhouse, signing as lessee, for the purposes of operating a restaurant and bar.

On October 4, 1999, Beck requested an insurance quote from Nanette Harms of Alexander & Bolton. Apparently, Alexander & Bolton had placed insurance on the subject property for the previous owners with limits on the value of the building at $140,000.00 and limits on the contents at $40,000.00. Beck was advised of the prior coverage and was provided with a quote from Burns & Wilcox of $2,850.75 on a new policy keeping the limits for the value of the building at $140,000.00 but raising the

1

contents limit to $100,000.00, per Beck's request. On October 7, 1999, Beck requested that the insurance be put into effect on the subject premises. A policy bearing number CPS338111 was issued by Scotsdale Insurance Company and mailed to Roadhouse with a letter from Harms outlining the following coverage under the policy:

a.  $140,000.00 on the building
b.  $100,000.00 on the contents
c.  $300,000.00 General Aggregate Liability Limits
d.  $300,000.00  Products & Completed Operations Aggregate
e.  $300,000.00 Personal & Advertising
f.  $300,000.00 each occurrence
g.  $ 10,000.00 food spoilage

No objection or other communication was made by Beck.

On September 21, 2000, Harms sent Beck another letter concerning the renewal of the policy which indicated the premium and asked Beck to sign a form indicating his intent to continue the coverage. On November 9, 2000, a policy bearing number 169845 issued by Lloyd's was mailed to Beck along with a third cover letter from Harms again outlining the above-listed coverage. This policy had the same coverage as the Scotsdale policy. Again, Beck made no objection or other communication to Harms or Alexander & Bolton concerning the coverage.

Then, on January 21, 2001, a fire occurred at Roadhouse. Hunt notified Alexander & Bolton of the fire the next day. On January 23, 2001, Jamie Vanderlick of Cunningham Lindsey U.S., Inc. ("Cunningham Lindsey") inspected the premises and determined that the only building damaged was the one housing the restaurant/bar and that the damage did not exceed $140,000.00.

On June 19, 2001, Lloyd's paid $53,547.63 to Givens, the additional insured/mortgagee, for the loss sustained in the fire. That same day, Beck signed a Receipt, Release, Hold Harmless Agreement and Acknowledgment of Assignment of

2

Mortgage releasing Lloyds, Burns & Wilcox, Cunningham Lindsey, and other parties and all of their respective employees, agents, brokers, adjusters and attorneys from any and all liability and/or obligation whatsoever up to the amount of $53,547.63 and recognizing that said sum was being paid in full and complete satisfaction of all claims under the Building Coverage of Certificate No. 169845, up to $53,547.63.

On August 15, 2001, Beck, Hunt, and two others were indicted by a Grand Jury for simple arson and conspiracy to commit simple arson with respect to the fire that occurred on January 21, 2001 at the Roadhouse premises.

On January 15, 2002, Roadhouse filed suit against Alexander & Bolton, Lloyd's, Burns & Wilcox, and Cunningham Lindsey. Plaintiff alleged that Alexander & Bolton and Burns & Wilcox failed to place adequate coverage, that Cunningham Lindsey failed to properly adjust the claim, and that Lloyd's failed to pay all replacement costs of damages under the policy. Since the filing of the suit, the Defendants have filed numerous exceptions resulting in numerous amendments to the petition and one previous appeal to this court.[1] At issue in the current appeal are the peremptory exception and motion for summary judgment filed on behalf of Alexander & Bolton and the motions to dismiss with prejudice filed on behalf of Lloyd's, Burns & Wilcox, and Cunningham Lindsey. Following a hearing on these matters, the trial court rendered judgments sustaining the peremptory exception on behalf of Alexander & Bolton and granting the motions to dismiss with prejudice on behalf of the other Defendants. Plaintiff appealed and asserted the following assignments of error:

---

[1]Roadhouse previously appealed the trial court's August 13, 2003 judgment granting Defendants' exceptions of no cause and no right of action and res judicata and giving Plaintiff ten days to cure the defects. In an unpublished opinion, *Roadhouse Bar-B-Que, Inc. v. Certain Underwriters at Lloyds*, 03-1779 (La.App. 3 Cir. 2/11/04), 866 So.2d 420, this court dismissed the Plaintiff's appeal based on the fact that the judgment complained of therein was a non-appealable, interlocutory order.

3

1.   The Honorable Trial Court Judge erred in releasing Alexander & Bolton, Inc., Burns & Wilcox of La., Inc., and Cunningham Lindsey U.S., Inc. on exceptions of no cause of action.

2.   The Honorable Trial Court Judge erred in finding that res judicata applied to the partial settlement issued by Lloyd's, London, and thus granting the peremptory exception of res judicata.

3.   The Honorable Trial Court Judge erred in granting the peremptory exception of peremption, finding that the peremptive period provided in La.R.S. 9:5606 commenced on the date of origination of the insurance policy. La.R.S. 9:5606, in essence, deals with the peremptive period for filing claims against agents.

For the reasons that follow, we affirm the rulings of the trial court.

## DISCUSSION

### 1. Plaintiff's Claims Against Alexander & Bolton, Inc.

At the outset, we note that the Plaintiff asserts two assignments of error as to Alexander & Bolton. The first alleges that the trial court erred in releasing Alexander & Bolton on an exception of no cause of action. The second asserts that the trial court erred in finding that the peremptive period commenced on the date of the origination of the insurance policy and in granting the exception of peremption in favor of Alexander & Bolton. We agree with Alexander & Bolton in its assertion that it was not dismissed on an exception of no cause of action and, therefore, we will not consider this assignment of error with respect to Alexander & Bolton[2] and consider only the assignment of error with regard to the peremptive period.

The applicable peremptive period is found in La.R.S. 9:5606, which provides, in pertinent part, as follows:

> A. No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or

---

[2]Alexander & Bolton did file exceptions of no cause of action but ultimately filed an answer on August 28, 2003.

4

neglect, or within one year from the date that the alleged act, omission, or neglect **is discovered or should have been discovered**. However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.

(Emphasis added.)

This Court enunciated the standard of review in an appeal on a peremptory exception in *Parker v. Buteau*, 99-519, p. 3 (La.App. 3 Cir. 10/13/99), 746 So.2d 127, 129: "When evidence is introduced and evaluated at the trial of a peremptory exception, an appellate court must review the entire record to determine whether the trial court was manifestly erroneous with its factual conclusions." Then, in *Egle v. Egle*, 01-927, p. 4 (La.App. 3 Cir. 2/6/02), 817 So.2d 136, 139, we noted that "[t]he trial court is not bound to accept as true the plaintiff's allegations in the petition at such a trial" on a peremptory exception. Moreover, in *Dauterive Contractors, Inc. v. Landry & Watkins*, 01-1112, p. 16 (La.App. 3 Cir. 3/13/02), 811 So.2d 1242, 1253, we recognized that "[t]hough different in their operation, the relatedness of the two theories justifies application of prescription's burden-shifting principles enunciated in the jurisprudence to peremption." Thus, "when the plaintiff's petition is perempted on its face, the burden shifts to the plaintiff to show why the claim has not perempted." *Id.*

Pursuant to La.Civ.Code art. 3461, a peremptive period cannot be renounced, interrupted, or suspended. The relevant statute, La.R.S. 9:5606, also specifically states that the one and three year periods provided for therein are peremptive and cannot be renounced, interrupted, or suspended. La.R.S. 9:5606 contains the same language as La.R.S. 9:5605 (the statute dealing with actions for legal malpractice) with respect to when the peremptive period begins to run; *i.e.*, "one year from the date that the alleged act, omission, or neglect is discovered or should have been

5

discovered." In *Campo v. Correa*, 01-2707, pp. 11-12 (La. 6/21/02), 828 So.2d 502, 510-511 (citations omitted), the Louisiana Supreme Court said:

> Prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort. A prescriptive period will begin to run even if the injured party does not have actual knowledge of facts that would entitle him to bring a suit as long as there is constructive knowledge of same. Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry. Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry may lead. Such information or knowledge as ought to reasonably put the alleged victim on inquiry is sufficient to start running of prescription.

The Plaintiff's allegation against Alexander & Bolton is that it did not obtain the coverage that the Plaintiff expected to have and that, consequently, Plaintiff suffered losses that were not covered. Plaintiff concedes that the peremptive period for this claim is one year from the date of discovery of the alleged deficiency. However, Plaintiff argues that the trial court erred in ruling that the peremptive period ran from the date of origination of the policy. Plaintiff asserts that the peremptive period should begin on the date of discovery of the alleged defect in the policy; *i.e.*, the date that the claim was not paid to its satisfaction. Plaintiff alleges that it has no legal responsibility to read or examine the policy at length. We disagree.

The salient issue is when Roadhouse knew or should have known that the policy did not provide the coverage it wanted. In support of its exception, Alexander & Bolton submitted the affidavits of Nannette Harms, who dealt with Beck in his purchase of insurance, and of Jamie Vanderlick, the property appraiser from Cunningham Lindsey who adjusted the damages from the fire. Plaintiff attempted to introduce the affidavit of Beck; however, it was not admitted into evidence since it was untimely. Plaintiff did not raise the failure to admit this affidavit into evidence as error and, thus, we will not consider it.

6

We agree with Alexander & Bolton in its assertion that Plaintiff had knowledge of the alleged negligent breach of contract more than one year before this suit was filed on January 16, 2002. This policy was renewed not once, but twice; each time with a letter from Harms outlining the coverage contained in the policy as indicated above. Neither of these letters prompted any response or other communication from Beck or Roadhouse.

Plaintiff contends that it had no reasonable way of knowing that the policy was insufficient until the claim was filed and not paid and that it had no responsibility to read the policy. Harms' affidavit, which was not controverted by Plaintiff, established that Beck requested a quote on the replacement cost using the same limits as previously provided on the building ($140,000.00) but with an increase on the contents limit from $40,000.00 to $100,000.00. Further, Plaintiff relies on *Louisiana Home Builders Ass'n Self-Insurers' Fund v. Adjustco, Inc.*, 633 So.2d 630 (La.App. 1 Cir. 1993), *writ denied*, 94-234 (La. 3/18/94), 634 So.2d 857, for the proposition that it had no duty to read or examine the policy at length. That decision, by its own wording, is limited to the facts of that case. There, the plaintiff had been told by the defendant not to worry about the minimum loss fund and, therefore, had no reason to be concerned about an unfunded gap in coverage. Such is not the case here. Beck requested a quote on a specified amount of coverage and the same was provided to him. He purchased the coverage and then renewed the coverage. Accordingly, if the policy was not as Beck intended, he was put on notice of this fact through the correspondence received from Harms and thereby had constructive knowledge that the coverage was not as he intended long before the fire occurred.

The trial court found that as of the date the policy was first transmitted to Beck on November 5, 1999 and as of the date that the renewal policy was transmitted to

7

Beck on November 9, 2000, Plaintiff knew of the existence of facts which would have enabled it to state a cause of action against the insurance agent for negligent failure to procure the desired coverage. As in *Dauterive*, 811 So.2d 1241, we find that it is unnecessary to say exactly which of these dates is controlling, as it is enough to say that the alleged negligence was "reasonably discoverable" sometime between November 5, 1999 and November 9, 2000. Thus, suit filed on January 16, 2002 was untimely, as it occurred more than one year after Plaintiff knew or should have known that the policy was not what it allegedly wanted, even if the alleged negligence was not discovered until the latest date of November 9, 2000. We do not believe that the findings of the trial court in this regard are manifestly erroneous and therefore affirm the dismissal of Alexander & Bolton on the ground of peremption.

2. **Plaintiff's Claims Against Certain Underwriters at Lloyd's, London, Cunningham Lindsey U.S., Inc., and Burns & Wilcox of La., Inc.**

The remaining Defendants contend that Plaintiff fails to adequately brief the issue of the dismissal of Lloyd's, Cunningham Lindsey, and Burns & Wilcox and instead attempts to argue the merits of the case as to the propriety of the trial court's granting of the prior exceptions of no cause of action and res judicata. These Defendants assert that this is not what is properly on appeal, as it is not the basis of the October 6, 2004 judgment. We disagree.

When this case was previously before this court, we dismissed the appeal on our own motion in an unpublished opinion, finding that it was from a non-appealable, interlocutory order. *Roadhouse Bar-B-Que, Inc. v. Certain Underwriters at Lloyds*, 03-1779 (La.App. 3 Cir. 2/11/04), 866 So.2d 420. The motion to dismiss granted on behalf of these Defendants was based on the Plaintiff's failure to amend its petition in accordance with the prior rulings of the trial court as to the exceptions of no cause of action and res judicata filed on behalf of these Defendants. As there is now a final

8

judgment, this appeal is proper, and we must now consider whether the trial court's rulings with respect to the exceptions of no cause of action and res judicata were correct. For the following reasons, we find that they were correct and affirm the dismissal of Lloyd's, Cunningham Lindsey, and Burns & Wilcox with prejudice.

The exceptions of no cause of action and res judicata are both peremptory exceptions. La.Code Civ.P. art. 927. The exception of no cause of action seeks to determine the sufficiency in law of the action, and no evidence can be introduced to support or controvert the objection that the petition fails to state a cause of action. La.Code Civ.P. art. 931. Well-pleaded facts contained in the petition must be accepted as true in determining the outcome of the exception. *City of New Orleans v. Board of Com'rs*, 93-690 (La.7/5/94), 640 So.2d 237. "In reviewing a trial court's ruling sustaining an exception of no cause of action, the court of appeal . . . should subject the case to *de novo* review because the exception raises a question of law and the lower court's decision is based only on the sufficiency of the petition." *Id*. at 253, *citing Mott v. River Parish Maint., Inc.*, 432 So.2d 827 (La.1983).

Res judicata bars relitigation when the second action arises out of the same transaction or occurrence that was the subject matter of the first action. La.R.S. 13:4231. "While the doctrine of res judicata is ordinarily premised on a final judgment on the merits, it also applies where there is a transaction or settlement of a disputed or compromised matter that has been entered into by the parties." *Ortego v. State, Dept. of Transp. and Dev.*, 96-1322, p. 6 (La. 2/25/97), 689 So.2d 1358, 1363, *citing Bailey v. Martin Brower Co.*, 94-1179 (La.App. 1 Cir. 4/7/95), 658 So.2d 1299. The exception of res judicata is reviewed by the court of appeal according to the manifest error standard when it is raised before the case is submitted. *Floyd v. City of Bossier City*, 38,187 (La.App. 2 Cir. 3/5/04), 867 So.2d 993.

9

In this case, Lloyd's alleged that Plaintiff had no cause of action against it because it made no allegation that Lloyd's caused Plaintiff to be under-insured, failed to allege that the $140,000.00 limits were insufficient, and failed to allege that the building sustained a total loss. Cunningham Lindsey alleged that Plaintiff failed to state a cause of action against it for negligent and/or "fraudulent" appraisal of damage since Cunningham Lindsey owed no duty to and was not in any contractual privity with Plaintiff. Burns & Wilcox alleged that Plaintiff had no cause of action against it since it is an insurance broker and had no privity of contract with Plaintiff and further, that it had nothing to do with the fire loss or the adjustment of the fire loss. These Defendants also alleged that Plaintiff's claims up to $53,547.63 were barred by res judicata because, on June 19, 2001, after Lloyd's paid $53,547.63 to Givens, the additional insured/mortgagee, for the loss sustained in the fire, Beck signed a Receipt, Release, Hold Harmless Agreement and Acknowledgment of Assignment of Mortgage with the following provisions:

> In consideration of the payment of the Policy proceeds [of $53,547.63], I, individually and on behalf of Roadhouse Bar-B-Que, Inc., do hereby release, remise and discharge forever certain Underwriters at Lloyds, London subscribing to Certificate No. 169845 ("Underwriters"), Newline Underwriting Management, Ltd., Burns and Wilcox, Ltd., Burns & Wilcox of LA, Inc., Corrie Bauckham Batts Limited, Cunningham Lindsey US, Inc. and all of their respective employees, agents, brokers, adjusters and attorneys, hereafter referred to as ("the released parties") from any and all liability and/or obligation whatsoever up to the amount of $53,547.63 which might be claimed under any or all of the terms, conditions, agreements or provisions of the Building Coverage of Certificate No. 169845 . . .
>
> . . . .
>
> I agree that the sum of $53,547.63, is being paid in full and complete satisfaction of all claims under the Building Coverage of Certificate No. 169845 arising out of the incident up to the amount paid ($53,547.63) and that by signing this Agreement, Roadhouse Bar-B-Que, Inc. and I release and completely indemnify the released parties for all claims relating to the Building Coverage of Certificate No. 169845 up to the amount of $53,547.63. I also understand that I do not waive my remaining rights under the Policy over and above the amount of $53,547.63 being paid at this time.

10

The words of the release are clear, and we find no manifest error in the trial court's determination that the doctrine of res judicata bars the claims against these Defendants up to $53,547.63.

We now address the motion to dismiss. The trial court agreed with these Defendants no less than five times with respect to the exceptions of no cause of action and res judicata. Each time, Plaintiff was given the opportunity to amend its petition to cure the defects. Each time the Plaintiff amended, these Defendants again asserted the same exceptions. The last time, on November 4, 2002, the trial court granted the exceptions and allowed the Plaintiff ten days to amend as to all exceptions, including those filed by Alexander & Bolton. Judgment was not signed until August 13, 2003, some nine months later. On November 14, 2002, Plaintiff filed a fifth amended petition but this petition addressed only its claims against Alexander & Bolton, who did not file any exceptions in response and instead filed an answer. Plaintiff then attempted to appeal the August 13, 2003 judgment but, as previously stated, this court dismissed that appeal on its own motion. After the record was returned to the trial court, Lloyd's, Burns & Wilcox, and Cunningham Lindsey filed a motion to dismiss based on the Plaintiff's failure to amend as ordered on November 4, 2002. On September 9, 2004, Plaintiff filed its sixth amended petition; however, this filing came too late.

We note that La.Code Civ.P. art. 934 provides that:

> When the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. If the grounds of the objection raised through the exception cannot be so removed, or if the plaintiff fails to comply with the order to amend, the action, claim, demand, issue, or theory shall be dismissed.

This court has previously held that a plaintiff was not entitled to a second opportunity to amend its petition where the trial court maintained exceptions to an

11

amended petition (which was made by order of the trial court on granting the defendants' first exceptions) without allowing curative efforts. *Dubroc v. Allstate Ins. Co.*, 93-780 (La.App. 3 Cir. 3/2/94), 633 So.2d 861. This court in *Dubroc* reasoned that the second judgment was a finding that the plaintiff failed to remove the grounds of the objection and addressed the merits of the exceptions.

In *Wilkins v. Hogan Drilling Co., Inc.*, 424 So.2d 420 (La.App. 2 Cir. 1982), the second circuit declined to allow a plaintiff to make further amendments after the trial court found that the second exception of no cause of action was well-founded, even after the plaintiff amended his petition, and recognized that to allow such further amendments would merely be an invitation to plaintiff to engage in speculative pleading. We find that such would be the case here. The exceptions made on behalf of these Defendants are well founded now for the same reasons as the first such exceptions were granted by the trial court. Roadhouse failed to state a cause of action against these Defendants even after five attempts. No further opportunity to amend is warranted, and we affirm the trial court's dismissal, with prejudice, of all claims against Lloyd's, Burns & Wilcox, and Cunningham Lindsey pursuant to La.Code Civ.P. art. 934.

## DECREE

For all of the foregoing reasons, we affirm the judgments of the trial court dismissing the Plaintiff's claims against Alexander & Bolton, Inc. based on peremption and dismissing Certain Underwriters at Lloyd's, London, Cunningham Lindsey U.S., Inc., and Burns & Wilcox of La., Inc., with prejudice, based on Plaintiff's failure to amend its petition as ordered by the court. Costs of this appeal are assessed against Plaintiff-Appellant, Roadhouse Bar-B-Que, Inc.

**AFFIRMED.**

12