MADELEINE M. LANDRIEU, Judge.
| iThis is a legal malpractice action which the trial court dismissed on an exception of peremption finding that it was filed more than three years after the alleged act of malpractice sued upon. Because we find that the trial court properly applied the three-year preemptive period set forth in Louisiana Revised Statute 9:5605 and because we find the fraud exception in that statute to be inapplicable to the facts presented here, we affirm the judgment of the trial court.
FACTS AND PROCEEDINGS BELOW
The Medical Malpractice Action
Between October 20 and November 8, 2005, Mr. Henry Walton was treated at West Jefferson Medical Center and is alleged to have sustained injuries occasioned by the malpractice of certain health care providers. Acting pursuant to a power of attorney, Mr. Walton’s cousin, Rev. James Smart, III, retained the defendant attorneys, Vazquez and Rawls, A.P.L.C.; John D. Rawls; J.A.G.S. Consultant, L.L.C.; and Judith A. Gic to file a medical malpractice action on behalf of Mr. Walton.
| aIt is undisputed that Vazquez and Rawls timely filed the medical malpractice complaint with the Patients Compensation Fund (PCF) on October 18, 2006 against West Jefferson Hospital and six other health care providers. Upon receipt of the complaint, the PCF, in letters dated November 1 and November 13, 2006, acknowledged receipt of the complaint, and confirmed the status of the defendants as qualified health care providers. Each letter also contained the following language:
In accordance with Act No. 961 of the 2003 Regular Session, which amended LA R.S. 40:1299.47(A)(l)(c), effective August 15, 2003, a filing fee of $100.00 per qualified healthcare provider is due within 45 days from the postmarked date of this notice. * * * Failure to comply shall render the request invalid and without effect and the request shall not suspend the time within which suit must be filed.
On January 9, 2007, Vazquez and Rawls mailed a check to the PCF for a total of $700.00 as payment of the filing fees.[1] In a letter dated January 22, 2007, the PCF notified Vasquez and Rawls that the filing fees remitted for this claim had been received beyond the time allotted by statute, and the claim was therefore considered to be invalid and without effect.
*903 In the meantime, on January 11, 2007, Vazquez and Rawls filed a new medical malpractice complaint with the PCF based on the same allegations. This complaint was filed on behalf of Mr. Walton’s heirs, as Mr. Walton had died on November 29, 2006 from injuries unrelated to his malpractice action.[2] The PCF acknowledged receipt of this claim and acknowledged that the filing fees on this amended complaint were timely paid.
|sIn December of 2007, the defendant health care providers filed peremptory exceptions of prescription in the 24th Judicial District Court, alleging that both the original complaint filed on behalf of Mr. Walton and the complaint filed on behalf of Mr. Walton’s heirs had prescribed.
On January 29, 2009, the trial court granted the exceptions of prescription, with prejudice, and Vazquez and Rawls filed an appeal with the Fifth Circuit Court of Appeal. The Fifth Circuit affirmed the trial court’s ruling on November 24, 2009, and the Louisiana Supreme Court denied a writ of certiorari on February 12, 2010. Smart v. W. Jefferson Med. Ctr., 2009-366 (La.App. 5 Cir. 11/24/09), 28 So.3d 1119, writ denied, 2009-2673 (La.2/12/10), 27 So.3d 857.[3]
Thereafter, on February 20, 2010, Mr. Rawls sent a letter to Rev. Smart in which he informed Rev. Smart of the Supreme Court’s denial of the writ, terminated the attorney-client relationship between them, and advised Rev. Smart that he may have a cause of action in legal malpractice.
The Legal Malpractice Action
On August 16, 2010, Rev. Smart filed the instant legal malpractice action against John Rawls, Cesar Vasquez, Vasquez and Rawls, A.P.L.C. and J.A.G.S. Consultant, L.L.C. On November 19, 2010, he filed a First Supplemental, Amending and Restated Petition naming Judith Gic as an additional defendant and adding three new causes of action relative to allegations of fraud. The defendants filed several exceptions, including exceptions of peremption. The exceptions of Lperemption alleged that the filing of the lawsuit on August 16, 2010 was untimely as the “act, omission, or neglect” sued upon was the failure of the defendant attorneys to timely pay the fees for the underlying medical malpractice claim. As the latest date those fees could have been paid to preserve the claim was in December of 2006, the defendant attorneys argued that Rev. Smart’s suit, filed more than three years later in August of 2010, was perempted. The defendant attorneys further argued that the allegations of fraud made by Rev. Smart did not fall within the fraud exception to Louisiana Revised Statute 9:5605(E).
Rev. Smart filed an opposition to these exceptions in which he asserted that his “three year peremptive period did not begin to run until his [underlying medical malpractice] suit was dismissed, which was on or about January 29, 2009.” This is the date the trial judge in the 24th JDC granted the defendants’ exceptions of prescription in the underlying medical malpractice action. In support of this position, Rev. Smart relied on this court’s decision in Brumfield v. McElwee, 2007-0548 (La.App. 4 Cir. 1/16/08), 976 So.2d 234.
The trial court heard all of the exceptions and overruled them. As to the ex *904 ceptions of peremption, the trial court found that the peremptive period for legal malpractice did not begin to run until February 12, 2010, the date the Louisiana Supreme Court denied writs on the underlying exceptions of prescription. Based on this finding, the trial court held that Rev. Smart’s legal malpractice action filed on August 16, 2010 was timely. The defendant attorneys applied for a writ of certio-rari to this court, which was denied. They then applied to the Supreme Court, | ¿which granted them writ and remanded the case to the trial court “for reconsideration of its ruling in light of Jenkins v. Starns, 2011-1170 (La.1/24/12), 85 So.3d 612.” Smart v. Vazquez, 2011-1416, p. 1 (La.4/13/12), 85 So.3d 689.
The defendant attorneys then re-urged their exceptions. This time, the trial court held that the “continuous representation rule,” the gravamen of Jenkins v. Stams, could not serve to suspend the commencement of the peremptive period and that the three-year time period for peremption commenced in December of 2006 when the defendant attorneys allegedly failed to timely pay the requisite fees to the PCF. As Rev. Smart did not file his legal malpractice lawsuit until August of 2010, the trial court sustained the exceptions of per-emption and dismissed Rev. Smart’s lawsuit, with prejudice.[4] This appeal followed. After the appeal was filed, Vazquez and Rawls and Mr. Rawls filed an exception of no cause of action directly with this court. For the reasons that follow, we affirm the ruling of the trial court and pretermit ruling on the exception of no cause of action.
ISSUES
Rev. Smart has raised several assignments of error, which we have consolidated into two:
I. Whether the trial court properly applied La. R.S. 9:5605, the Supreme Court’s opinion in Jenkins, and our decision in Brumfield to the facts of this case.
II. Whether the trial court erred in finding that the fraud exception in La. R.S. 9:5605(E) is inapplicable to the facts of this case.
| DISCUSSION
Peremption is a period of time fixed by law for the existence of a right. Unless timely exercised, the right is extinguished upon the expiration of the peremptive period. La. C.C. art. 3458. The function of the peremptory exception is to have the plaintiffs action declared legally nonexistent, or barred by effect of law, and hence this exception tends to dismiss or defeat the action. La. C.C.P. art. 923. When the peremptive period has run, the cause of action itself is extinguished unless timely exercised. Id.
When an exception of peremption is filed, ordinarily the burden of proof is on the party pleading peremption. However, when peremption is evident on the face of the pleadings, the burden shifts to the plaintiff to show the action has not been perempted. Rando v. Anco Insulations, Inc., 2008-1163, p. 20 (La.5/22/09), 16 So.3d 1065, 1082; Metairie III v. Poche’ Const., Inc., 2010-0353 (La.App. 4 Cir. 9/29/10), 49 So.3d 446, 449. When evidence is introduced and evaluated at the trial of a peremptory exception, appellate courts review peremptory exceptions by reviewing the entire record to “determine whether the trial court was manifestly erroneous with its factual conclusions.” Roadhouse Bar-B-Que, Inc. v. Certain *905 Underwriters at Lloyds, 2004-1697, p. 5 (La.App. 3 Cir. 5/4/05), 909 So.2d 619, 623
Any discussion of legal malpractice in Louisiana properly begins with Louisiana Revised Stature 9:5605. This statute sets forth the time periods in which as action for legal malpractice must be brought, defines these time periods as peremptive, and sets forth the only exception to the strict application of these time periods. Section A of the statute provides that any suit for legal malpractice
17shall be brought ... within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
Section B of the statute states as follows:
The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.
The statute itself is clear and unambiguous, and our jurisprudence interpreting this statute is well-settled. An action for legal malpractice must be brought within one year of the date of the act, omission, or neglect or within one year of the date of discovering the act, omission or neglect. In all events, a claim must be filed within three years of the date of the act, omission or neglect, regardless of when the act, omission or neglect is discovered. Jenkins v. Starns, 2011-1170, p. 13 (La.1/14/12), 85 So.3d 612, 620. In Reeder v. North, 97-0239, p. 9 (La.10/21/97), 701 So.2d 1291, 1295, and in Jenkins, the Supreme Court recognized the clear legislative intent of this statute, as well as its “perceived inequities.” The majority in Reeder noted:
[Tjhere is no doubt that the Legislature intended that three years after the “act, omission, or neglect,” the cause of action is extinguished, regardless of when the negligence is discovered and regardless of whether a malpractice action may be brought within that three-year period. The Legislature was aware of the pitfalls in this statute but decided, within its prerogative, to put a three-year absolute limit on a person’s right to sue for legal malpractice, just as it would be within its prerogative to not allow legal malpractice actions at all.
Id. at p. 9, 701 So.2d at 1297.
| sIn the instant case, the plaintiffs petitions allege that the defendant attorneys committed legal malpractice when they failed to timely pay the costs due to the PCF, thus allowing the claim to prescribe. It is undisputed that the latest these fees could have been paid to preserve the claim was December 28, 2006, forty-five days from the last of the two letters sent to plaintiffs counsel by the PCF in accordance with La. R.S. 40:1299.47(A).[5] The failure to timely pay resulted in the claim prescribing. Thus, the failure to pay this fee is the alleged “act, omission or neglect” sued upon.
Rev. Smart did not file the instant legal malpractice claim until August 16, 2010, more than three years after this alleged malpractice. Accordingly, on the face of the pleadings, this legal malpractice claim is perempted, and the burden shifts to Rev. Smart to establish a defense to per-emption.
*906 On appeal, Rev. Smart first argues in his brief that Jenkins only provided new substantive law on the one year period and that “consistent with Jenkins, Rev. Smart’s claim is within one year of when he got notice of the possible claim for legal malpractice.” Rev. Smart argues that he was unaware of the non-payment of the filing fees or the rejection of the filing fee by the PCF and was unaware that his case was lost until January 29, 2009, the date that the trial court granted the exceptions of prescription in the underlying medical malpractice action. Rev. Smart urges us to use the “date he reasonably could have known his case was lost” as the date that commenced his peremptive period. In support of his position, Rev. Smart relies on our decision in Brumfield v. McElwee, 2007-0548 (La.App. 4 Cir. 1/16/08), 976 So.2d 234. Rev. Smart’s interpretation of Jenkins is incorrect, and ^ his reliance on Brumfield is misplaced.
| cRefore discussing these two cases, it is important to note that Rev. Smart did not present any evidence in the trial court to challenge the court’s factual finding that the defendant attorneys’ act of alleged legal malpractice occurred in December of 2006. Instead he argues that notwithstanding that fact, the date to be used to begin the running of the peremptive period is when Rev. Smart received notice of the malpractice. This argument is contrary to the well-settled jurisprudence on this issue. As stated by this court in Brumfield, the latest one can file a legal malpractice action is three years from the date of the alleged malpractice, or one year from the date of discovery of the alleged malpractice, whichever comes first. Brumfield, 2007-0548, p. 5, 976 So.2d at 239; Reeder, 97-0239, p. 5, 701 So.2d 1291, 1295.
In Brumfield, the client filed a legal malpractice action against a law firm and attorneys who had represented him in his underlying personal injury lawsuit, alleging his lawsuit had been dismissed, with prejudice, for abandonment due to the negligence of his attorneys. The attorneys filed exceptions of prescription, which the trial court granted, and we affirmed. In analyzing the issues in that case, this court used the date the underlying case was dismissed as to one defendant (February 1, 2001) as the date which commenced the peremptive period, finding that date to be the alleged “act, omission or neglect” complained of. As Mr. Brumfield did not file his lawsuit against his attorneys until August 18, 2005, more than three years later, we held his cause of action to be perempt-ed.
Rev. Smart finds it significant that the Brumfield court used the date the order of abandonment was signed as the date that triggered the peremptive period. He correctly notes that the provisions of Code of Civil Procedure article 561 (relative to abandonment) are self-operative. That is, after the passage of the |inrequisite time period, "with no step in the prosecution, the claim is abandoned, irrespective of when an order of abandonment is signed. Rev. Smart contends that this court’s use of the dismissal date, as opposed to the earlier “date of abandonment” is authority that the appropriate date to use in his case is January 29, 2009, the date the trial court granted the exception of peremption. This date, he asserts, is the “trigger” for the running of his three year peremptive period, rather than the date on which the lawyers in his case allegedly failed to timely pay the requisite fees to the PCF. Under this analysis, he argues, the suit filed August 16, 2010 was timely.
Brumfield is distinguishable from the instant case in several respects. In Brum-field, the plaintiff conceded that misconduct constituting malpractice had occurred on February 1, 2001, the date the trial *907 court dismissed his claims as abandoned. Id., p. 11, 976 So.2d at 241. Because this date was more than three years prior to the filing of his legal malpractice suit, there was no need for the court in Brum-field to consider whether malpractice might have occurred at an earlier date that might have triggered the peremptive period. Additionally, Mr. Brumfield alleged in his petition that the act of malpractice was his lawyer’s failure to defend the abandonment, which occurred on the date his case was dismissed (not before). He asserted that the trial court had erred by dismissing his case as abandoned because his deposition, while not in the record, had been taken in the intervening time-period and would have served to defeat the motion to dismiss. Thus, the alleged negligence of the attorney was his “inaction resulting in the abandonment or failure to seek appellate relief from the alleged premature dismissal” of the case. Id.
|nIn the instant case, there is no question that the act of malpractice alleged by Rev. Smart is the failure of the defendant attorneys to timely assert his medical malpractice claim. This cause of action in legal malpractice clearly accrued when the Rev. Smart’s former attorneys failed to perfect the filing of the medical malpractice complaint by failing to pay the requisite fees to the PCF by December 28, 2006, the last date upon which those fees would be accepted. As the Louisiana Supreme Court has held, “once the client has proved that his former attorney accepted employment and failed to assert the claim timely, then the client has established a prima facie case that the attorney’s negligence caused him some loss, since' it is unlikely the attorney would have agreed to handle a claim completely devoid of merit.” Jenkins v. St. Paul Fire & Marine Ins. Co., 422 So.2d 1109, 1110 (La.1982). Because more than three years passed between the date the malpractice occurred in December, 2006, and the filing of the instant legal malpractice action in August, 2010, the trial court properly sustained the exception of peremption.
This conclusion is also in accord with Jenkins v. Stams, despite Rev. Smart’s contention that Jenkins supports his position in this case.
In the instant case, when the exceptions of peremption were first heard in the trial court, the court found that the peremptive period had not begun to run until the underlying medical malpractice case had ended, that is, until the Supreme Court had denied writs on the underlying exceptions of prescription and the defendant attorneys were no longer representing the client. Because the Supreme Court had denied writs in the underlying medical malpractice action in February of 2010, the trial court held that Rev. Smart’s legal malpractice petition filed in August of 2010 112was timely. The trial court’s decision was based on the continuous representation rule set forth by counsel for Rev. Smart both in his brief and in oral argument.[6] On remand from the Supreme Court, with instructions from that Court to reconsider its ruling in light of Jenkins, the trial court held that the commencement of the peremptive period could not be suspended by the continuous representation rule. Finding that the peremptive period in this case had commenced when the defendant attorneys failed to pay the requisite filing fees, the trial court sustained the exceptions of peremption on the basis that that three years had elapsed *908 between then and the filing of the legal malpractice lawsuit.
During oral argument in the trial court after remand, counsel for Rev. Smart stated that Rev. Smart was waiving his argument on the “continuous representation rule,” the gravamen of Jenkins. Instead, counsel argued, as he does here, that Jenkins stands for the proposition that even where the “act, omission or neglect” has occurred more than three years before the filing of the malpractice suit, the court must nonetheless look to the “notice” or “date of discovery” of the malpractice to determine when the peremptive period begins to run. This argument is based upon an incorrect interpretation of Jenkins.
Jenkins is a legal malpractice lawsuit which arose when a judgment debtor sued her former lawyer for allowing a default judgment to be rendered against her. The underlying suit was brought by a contractor, Mr. Medlock, against Ms. Jenkins alleging breach of a construction contract. Mr. Medlock alleged that Ms. Jenkins failed to pay him for his work in accordance with the terms of their contract. The contract governing the relationship between these parties was signed in April of | ^2006, and the lawsuit alleging breach of the contract was brought by Mr. Med-lock against Ms. Jenkins in November of 2006. Ms. Jenkins retained Mr. Starns to defend her in the lawsuit. While Mr. Starns was operating on what he believed to be an informal extension of time in which to answer the lawsuit, Mr. Medlock confirmed a default judgment against Ms. Jenkins. In December of 2006, Ms. Jenkins received notice of this default judgment and notified Mr. Starns. Mr. Starns filed a petition to annul the judgment, which was met with exceptions. These exceptions were sustained, and in April of 2007, Ms. Jenkins Petition to Annul was dismissed. In May of 2008, Ms. Jenkins appeared in court for a Judgment Debtor rule. In November of 2008, Ms. Jenkins filed the legal malpractice case against Mr. Starns that formed the basis of the Supreme Court’s opinion.
The parties in Jenkins recognized that the “act, omission or neglect” sued upon was the failure of Mr. Starns to timely file an answer to the lawsuit, thus allowing an adverse judgment to be secured against his client. As Ms. Jenkins did not file suit until more than a year after that judgment, she argued that Mr. Starns’ continuous representation of her suspended the commencement of the one-year peremptive period. The Supreme Court rejected that argument, finding that the one-year time period from the date of the “act, omission, or neglect” is peremptive when the client knows of the alleged malpractice. The Court specifically held that the fact that Mr. Starns was continuing to represent Mr. Jenkins in an effort to remedy his alleged wrong did not suspend the commencement of the peremptive period.
We first note that Jenkins differs from the instant case because the issue in Jenkins was whether the lawsuit had been filed within the one-year limitation | uperiod (rather than the three-year period) set forth in La. R.S. 9:5605. Thus, the issue of when the client knew or should have known of the alleged legal malpractice was relevant. Prior to Jenkins, the continuous representation rule could be applied to delay the date of discovery of the malpractice, which therefore delayed the commencement of the one-year period, but not the three-year period, relative to peremption. In the instant case, however, it is evident on the face of the record that the legal malpractice suit was filed more three years after the alleged act, omission or neglect. In such instances, the law is clear that the date of discovery is irrelevant. Hence, the trial court in this case, *909 when the matter was remanded to it by the Supreme Court, properly held that its earlier decision, which had- relied on the continuous representation rule, was in error. The trial court also properly found that certain facts it had previously considered, namely — when Rev. Smart knew or should have known he had a claim for legal malpractice; the fact that his lawyers were still representing him; and the fact that the court’s ruling on prescription in the underlying medical malpractice case had not become final until February of 2010— were irrelevant to the tolling of the three-year peremption period. Because the “act, omission, or neglect” complained of in Rev. Smart’s petition was Vazquez and Rawls’ failure to properly pay the filing fees to the PCF in December of 2006, the suit filed by Rev. Smart more than three years later on August 16, 2010 was perempted. Rev. Smart’s assignment of error on this issue is therefore without merit.
11fiFraud
Finally, we address Rev. Smart’s allegation that because he has alleged legal malpractice based on fraud, pursuant to Louisiana Revised Statute 9:5605(E), neither the one-year nor the three-year peremp-tive periods apply to bar his lawsuit.
Louisiana Revised Statute 9:5605(E) provides that the “peremptive period provided in Subsection A of this Section shall not apply in cases of fraud, as defined in Civil Code Article 1953.” Civil Code Article 1953 provides that “[fjraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction.”
Rev. Smart asserts that this fraud exception should apply because his attorneys fraudulently concealed their malpractice from him with the intent of depriving him of his opportunity to bring this lawsuit and fraudulently induced him to hire them (“fraud in the inducement”).
Addressing these arguments, we first note that Louisiana courts of appeal have consistently rejected the idea that the concealment of legal malpractice constitutes fraud under Louisiana Revised Statute 9:5605(E). Broadscape.com, Inc. v. Matthews, 2007-0545, p. 12 (La.App. 4 Cir. 3/5/08), 980 So.2d 140; Atkinson v. LeBlanc, 03-365, p. 8 (La.App. 5 Cir. 10/15/03), 860 So.2d 60, 65 (where the alleged fraud was in the confection and assignment of a promissory note); Ratcliff v. Boydell, 93-0362, 92-0630, p. 12 (La.App. 4 Cir. 4/3/96), 674 So.2d 272, 280, amended as to interest on rehearing, (La.App. 4 Cir. 5/31/96) (where the alleged fraud involved the attorney’s misrepresentation of the value of a structured settlement to obtain an excessive fee). In Brumfield, 976 So.2d at 239-40, this court held that post-malpractice, fraudulent concealment does not constitute fraud as contemplated in the exception set forth in Louisiana Revised Statute 9:5605(E).[7]
Nevertheless, Rev. Smart urges us to reconsider this “jurisprudentially created” interpretation of this statute. We see no reason to do so, especially in light of the facts of this case. There is no evidence in the record to support Rev. Smart’s claim that the defendant attorneys fraudulently concealed their alleged malpractice from him. The evidence actually supports a finding Rev. Smart was present when his underlying malpractice case was argued before the Fifth Circuit and was *910 well aware (perhaps even before then) that his underlying medical malpractice claim was in jeopardy. Therefore, we reject Rev. Smart’s argument that his attorneys fraudulently concealed malpractice from him.
Alternatively, Rev. Smart argues that if we are not inclined to reconsider the jurisprudence on “post-malpractice fraudulent concealment,” we should nonetheless find “fraud in the inducement.” Essentially, Rev. Smart alleges that the defendant attorneys fraudulently induced him to hire them by purposely misleading him to believe that they were competent medical malpractice attorneys. Pretermitting whether this allegation could amount to fraud under Louisiana Revised Statute 9:5605(E), there is absolutely no evidence in the record that the defendants knowingly or intentionally sought to deceive Rev. Smart or to cause him harm. Moreover, Rev. Smart had an opportunity in the trial court to present evidence in support of these factual allegations but failed to do so. We therefore find this assignment of error to be without merit.
|17CONCLUSION
For the reasons stated, we find that the trial court did not err in granting the exception of peremption. We affirm the ruling of the trial court, and pretermit ruling on the exception of no cause of action.
AFFIRMED

. This represented $100.00 for each health care provider sued.

. Rev. Smart is one of four heirs who are the plaintiffs in this second PCF complaint.

. The Fifth Circuit opinion contains internal inconsistencies regarding the dates on which certain events occurred. These inconsistencies do not afiect the accuracy of the legal analysis or the conclusion reached.

. The ti'ial court found it unnecessary to rule on the remaining exceptions.

. As stated earlier, the PCF letters were postmarked on November 1 and 13, 2006.

. The continuous representation rule suggests that it is impractical and unfair to require a client to sue his own attorney while the attorney is still representing the client and attempting to remedy the wrong.

. But see, Jenkins v. Starns and the majority’s treatment of the dissent by Judge McClendon in the opinion of the First Circuit.